[Cite as *MRI Software, L.L.C. v. W. Oaks Mall FL, L.L.C.*, 2018-Ohio-2190.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 105846

---

**MRI SOFTWARE, L.L.C.**

PLAINTIFF-APPELLANT/
CROSS-APPELLEE

vs.

**WEST OAKS MALL FL, L.L.C.**

DEFENDANT-APPELLEE/
CROSS-APPELLANT

---

**JUDGMENT:**
AFFIRMED IN PART; REVERSED IN PART
AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-15-850894

**BEFORE:** Jones, J., Kilbane, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** June 7, 2018

**ATTORNEYS FOR APPELLANT/CROSS-APPELLEE**

Alexander E. Gertsburg
Michael A. Callam
Maximilian Julian
Gertsburg Law Firm Co. L.P.A.
100 N. Main Street, Suite 300
Chagrin Falls, Ohio 44022

Vladimir P. Belo
Dinsmore & Shohl L.L.P.
191 W. Nationwide Blvd., Suite 300
Columbus, Ohio 43215


**ATTORNEYS FOR APPELLEE/CROSS-APPELLANT**

Keith W. Schneider
Maguire & Schneider L.L.P.
1650 Lake Shore Drive, Suite 150
Columbus, Ohio 43204

Frederick D Elias
Christine R. Essique
Elias & Elias P.C.
7091 Orchard Lake Road, Suite 110
West Bloomfield, Michigan 48322

LARRY A. JONES, SR., J.:

**{¶1}** Plaintiff-appellant/cross-appellee, MRI Software, L.L.C. ("MRI"), appeals the trial court's judgment in favor of defendant-appellee/cross-appellant, West Oaks Mall FL, L.L.C. For the reasons that follow, we affirm in part, reverse in part, and remand for a determination of attorney fees and costs.

**{¶2}** MRI is an Ohio-based software company that provides real estate investment and management software. West Oaks owns a mall in Ocoee, Florida, and is a subsidiary of Moonbeam Capital Investments (collectively referred to as "West Oaks").

**{¶3}** In 2013, West Oaks approached MRI about transitioning its software from its then-current program, QuickBooks, to another management software because West Oaks needed a program that could keep pace with its expanding business. According to West Oaks, it relied on MRI's representations that the software could meet the company's needs; West Oaks was intending to expand the use of real estate software to its other properties. West Oaks required a web-based system, as opposed to a Windows-based system, because it had different users located throughout the United States that would need to access the system.

**{¶4}** In March 2013, West Oaks entered into a one-year contract with MRI, effective April 1, 2013. The "Agreement" consisted of eight documents drafted by MRI. The Agreement also included a three-week express implementation plan, for which West Oaks paid an additional $8,800. But, according to West Oaks, MRI's software was not implemented within three weeks or anytime thereafter. West Oaks continued to use QuickBooks while attempting to implement MRI's software.

**{¶5}** West Oaks notified MRI of the problems it was having with its software and requested MRI's assistance multiple times. West Oaks ceased paying its invoices to MRI in July 2013. At that point West Oaks had already paid $23,000 to MRI. In January 2014, MRI sent notice to West Oaks, terminating the contract and accelerating the payments that were due, which totaled $94,432.45.

**{¶6}** West Oaks purchased a new software system in January 2014, which it had up and running in three days. In 2015, MRI filed suit against West Oaks alleging breach of contract and unjust enrichment.

**{¶7}** The case proceeded to a bench trial. Prior to trial, the court granted discovery sanctions in favor of West Oaks and against MRI due to MRI's failure to timely produce discovery documents. After trial, the court issued comprehensive findings of fact and conclusions of law with judgment in favor of West Oaks on all claims, but provided that each party would bear its own costs.[1]

**{¶8}** MRI filed a timely notice of appeal, and West Oaks filed a notice of cross-appeal. MRI raises the following assignments of error for our review:

> I. The trial court erred as a matter of law in its interpretation of the parties' contract.

> II. The trial court erred in its legal conclusion that Plaintiff failed to perform under the contract.

> III. The trial court erred in failing to find unjust enrichment.

**{¶9}** West Oaks raises the following cross-assignment of error:

> I. The Trial Court erred in failing to award reasonable attorney fees and costs to Defendant, pursuant to Section 10.16 of the parties' contract because (a) the Trial Court determined the contract between the parties is enforceable * * *, and (b)

---

[1]The trial court did award West Oaks limited deposition and trial costs based on MRI's discovery violations.

Defendant is the prevailing party.

## Standard of Review

{¶10} The standard of review of the trial court's conclusion that MRI failed to perform its contractual obligations is a mixed question of fact and law. *Troy Oaks Homes & Residential Club, Inc. v. Sokolowski*, 2016-Ohio-8427, 78 N.E.3d 365, ¶ 28 (11th Dist.2016), citing *Ohio Edn. Assn. v Lopez*, 10th Dist. Franklin No. 09AP-1165, 2010-Ohio-5079. Appellate review of a mixed question of fact and law requires an appellate court to give deference to a trial court's factual findings if they are supported by competent, credible evidence, and to independently review whether the trial court properly applied the law to the facts. *Troy Oaks Homes & Residential Club, Inc.* at *id.*

{¶11} While the interpretation of a contract is generally a matter of law subject to de novo review, the same standard does not apply when the agreement is ambiguous, as the trial court found in this case. *See Dzina v. Dzina,* 8th Dist. Cuyahoga No. 83148, 2004-Ohio-4497, ¶ 11 – 13 (whenever contractual language is deemed to be ambiguous, it is the responsibility of the trial court to interpret it, and the trial court has broad discretion in clarifying ambiguous language). The interpretation of an ambiguous term used in a contract is a question of fact and will not be reversed on appeal absent an abuse of discretion. *Maines Paper & Food Serv., Inc. v. Eanes*, 8th Dist. Cuyahoga No. 77301, 2000 Ohio App. LEXIS 4480, 2 (Sept. 28, 2000). A trial court's decision does not constitute an abuse of discretion unless it is unreasonable, arbitrary, or unconscionable. *Castlebrook Ltd. v. Dayton Properties Ltd.*, 78 Ohio App.3d 340, 346, 604 N.E.2d 808 (2d Dist.1992), citing *Huffman v. Hair Surgeon, Inc.,* 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985). Accordingly, when applying this standard of review, an appellate court is not free to substitute its judgment for that of the trial court. *Nofzinger v. Blood*, 6th Dist. Huron

No. H-02-014, 2003-Ohio-1406, ¶ 42.

**{¶12}** With regard to the trial court's factual findings that MRI failed to perform its contractual obligations, it is important to note that the weight to be given the evidence and the credibility of the witnesses are issues primarily for the trier of fact. *See id.* at ¶ 41. A reviewing court must, therefore, accord due deference to the credibility determinations made by the fact finder. *See id.* at ¶ 65. Because the trial court is best able to view the witnesses and observe their demeanor when it weighs the credibility of the offered testimony, there is a presumption that the findings of the trier of fact are correct. *Id.*, citing *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). The standard for appellate review of the trial court's conclusion that MRI failed to establish a claim for unjust enrichment is manifest weight of the evidence. *See Hamilton v. Ball*, 4th Dist. Scioto No. 13CA3533, 2014-Ohio-1118, ¶ 15. Accordingly, following a bench trial, a reviewing court will generally uphold a trial court's judgment as long as the manifest weight of the evidence supports it — that is, as long as "some" competent and credible evidence supports it. *Id.* at ¶ 15.

**No error in interpreting Agreement**

**{¶13}** As an initial matter, we note that MRI chose to argue its first two assignments of error together, stating they are "two sides of the same coin." Whether that is the case, the appellate rules state that this court "may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." App.R. 12(A)(2).[2] Because cases should be decided on their merits, however, we will address MRI's

---

[2] App.R. 16(A)(7) provides that the brief of the appellant shall include:

> (7) An argument containing the contentions of the appellant with respect to each assignment of

first and second assignments of error. Counsel is cautioned that, in the future, the failure to separately argue assignments of error may result in this court declining to address assignments of error.

{¶14} In the first and second assignments of error, MRI contends that the trial court erred in interpreting the Agreement in West Oaks' favor.

{¶15} At trial, West Oaks argued that MRI failed to perform in accordance with the Agreement in the following ways: (1) MRI failed to implement the software in three weeks; (2) MRI did not implement the required "commercial management and accounts payable solutions in the web platform"; (3) MRI failed to meet the functional specifications[3] of the software; and (4) MRI failed to provide software support.

## A. Express implementation

{¶16} The trial court found that MRI failed to complete the express implementation within three weeks or anytime thereafter. The trial court noted that MRI did not even begin the implementation process until four weeks after the effective date of the Agreement and caused further delays. MRI does not contest this finding on appeal; we find that the trial court's findings were supported by competent and credible evidence.

## B. MRI received actual or constructive notice of "Errors"

{¶17} West Oaks argued and the trial court found that MRI failed to provide a software system in the web platform. The trial court specifically found that MRI was required to

---

error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary.

[3] According to the Agreement, "Functional Specifications" "means those specifications of MRI's software functionality as set forth" on MRI's website and may be updated "upon posting new specifications at such web page address." In other words, to locate the parameters of what functions MRI's software performs, West Oaks could find the information on MRI's website instead of in a written document.

"implement the Commercial Management, Accounts Payable and General Ledger solutions in the Web platform as part of the * * * Express Implementation * * * and failed to do so." The trial court also found that the software was essentially unusable for West Oaks' purposes and MRI failed to provide adequate support to fix the software problems.

{¶18} Under the parties' agreement, MRI warranted that the software would be free from "Errors," which is defined in the Agreement as "a material failure of a hosted MRI Software to conform to its Functional Specifications that is reported by Client to and replicable by MRI."

{¶19} MRI claims that there were no "Errors" within the term of the parties' agreement because West Oaks failed to give proper notice to MRI of any error in the functional specifications, as required by the Agreement. We disagree.

{¶20} Pursuant to the Agreement, notices were required to be "delivered by hand, by overnight courier, or by certified mail, return receipt requested." The trial court found that West Oaks emailed MRI about the problems it was having with the software on July 6, July 18, and August 20, 2013, and sent notice via first class mail on September 16, October 22, and November 18, 2013.

{¶21} In response to West Oaks' July 18, 2013 email, MRI assigned a client experience manager to devise a "game plan" to address West Oaks' issues with the software. On July 22, 2013, representatives from West Oaks and MRI conducted an online video conference to address West Oaks' issues, but the problems were not resolved. On August 20, 2013, MRI's senior officers and executives were copied on internal emails referencing West Oaks' complaints and the parties conducted a conference call during which West Oaks outlined their ongoing problems with the software.

{¶22} "Under Ohio law, failure to comply with a contractual notice provision may be

harmless if actual or constructive notice is nonetheless accomplished." *Simplifi Health Benefit Mgt., L.L.C. v. Cayman Islands Natl. Ins. Co.*, S.D.Ohio No. 2:13-CV-714, 2016 U.S. Dist. LEXIS 101386, 15 (Aug. 2, 2016). Even if written notice is required, where there is evidence of actual notice, a technical deviation from a contractual notice requirement will not bar the action for breach of contract brought against a party that had actual notice. *Gollihue v. Natl. City Bank*, 2011-Ohio-5405, 969 N.E.2d 1233, ¶ 22 (10th Dist.2011); *see also Roger J. Au & Son, Inc. v. N.E. Ohio Regional Sewer Dist.*, 29 Ohio App.3d 284, 504 N.E.2d 1209 (8th Dist.1986) (recognizing an abundance of Ohio case authority that failure to abide by a notice requirement "may be harmless" if the other party nonetheless receives notice).

{¶23} In light of the above, we conclude that the trial court did not err when it found that MRI had notice of the problems West Oaks' was having with its software.

## C.  Error in functional specifications

{¶24} MRI also argues that even if it had notice, there was no error with respect to any functional specification in the software and the court's conclusion that the software was not "dynamic and flexible" enough to meet West Oaks' needs was improperly based on evidence outside the record, specifically through the testimony of West Oaks' information technologist, Sergey Siminyuk.

{¶25} At trial, after hearing arguments from both parties, the trial court determined that the Agreement was ambiguous and decided to allow the introduction of parol evidence through Siminyuk's testimony:

> The evidence before this court demonstrates numerous patent ambiguities in the
>
> contract.  While many of the specifications are clear, such as two-way credit
>
> screening, interface, others are not clear.  When looking at the functional

specifications in the software, although in English, they do not provide specificity or empirical objective standards. Terms such as ["]dynamic and flexible reporting,["] ["]analysis,["] [and] ["]command of sales data,["] are relative terms which may vary by degrees and have different values to different customers.

* * *

So, based on that, I am going to allow this witness, * * * , some ability to interpret or explain what he was looking for from MRI.

{¶26} In its findings of fact and conclusions of law, the court stated:

The Agreement between the parties contains numerous patent ambiguities as to the Functional Specifications of the software. * * * Many of the specifications * * * fail to provide specificity or empirical objective standards.

{¶27} When construing a contract, a court's primary objective is to ascertain and give effect to the intent of the parties. *Hamilton Ins. Servs., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273, 714 N.E.2d 898 (1999). To achieve this objective, we must examine the contract as a whole and presume that the language used reflects the parties' intent. *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 509 N.E.2d 411 (1987), paragraph one of the syllabus. Thus, when the contract is clear and unambiguous, the court may look no further than the four corners of the contract to find the intent of the parties. *Alexander v. Buckeye Pipeline Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph two of the syllabus.

{¶28} However, if a contract is reasonably susceptible to more than one meaning, then it is ambiguous and the court may consider parol evidence to determine the parties' intent. *Illinois Controls, Inc. v. Langham*, 70 Ohio St.3d 512, 521, 639 N.E.2d 771 (1994). Doubt or ambiguity in the language of a contract will be construed strictly against the party who prepared it. *Smith v. Eliza Jennings Home*, 176 Ohio St. 351, 355, 199 N.E.2d 733 (1964), citing 11 Ohio

Jurisprudence 2d, Contracts, Section 147, at 391. If evidence is allegedly admitted in violation of the parol evidence rule, the standard of review is harmless error, which means the reviewing court must determine whether the error was harmless. *Robert v. Marks*, 3d Dist. Henry No. 7-16-15, 2017-Ohio-1320, ¶ 11, citing *Langfan v. Carlton Gardens Co.*, 183 Ohio App.3d 260, 2009-Ohio-3318, 916 N.E.2d 1079, ¶ 24 (3d Dist.).

{¶29} MRI claims that the court admitted parol evidence that varied or contradicted the terms of the contract it had with West Oaks, specifically, that MRI made the following precontractual representations to West Oaks: (1) West Oaks would only operate a web-based version of the software; (2) there was a definite three-week time period to implement the software; and (3) West Oaks was led to believe the software would be customized. Whether those representations were made or not, however, is not germane to the issue of functional specifications. On this point, the parties appear to agree. In other words, the trial court based its findings on evidence other than the alleged pre-contractual representations.

{¶30} The trial court in this case did not err in considering parol evidence to interpret the meaning of the contract. Siminyuk's testimony offered the trial court clarification for the terms "dynamic and flexible reporting" with regard to the report generation capabilities that MRI's software was to provide to West Oaks. Siminyuk's testimony also explained what "command of sales data" meant with respect to the accounting capabilities MRI's software was to offer. Because the contract was ambiguous as to these terms, the trial court did not err in considering evidence outside the contract.

## D. Failure to provide software support

{¶31} At trial, West Oaks contended that MRI failed to provide adequate software support. West Oaks' information technologist, Sergey Siminyuk, was designated to lead the

implementation process on behalf of the company and work in conjunction with MRI. As mentioned, West Oaks had problems with the software from the onset, but increased the number of licenses on the software from 150 to 600 based on MRI's representation that a more sophisticated division of its company would supervise its account. West Oaks also extended its contract with MRI from one year to five years, based on pricing incentives and MRI's assurances that the implementation issues would be quickly resolved. The problems with the software continued, however, and resulted in: West Oaks sending incorrect statements to tenants, losing a national tenant, opening at least 25 support cases with MRI,[4] an inability to bill its tenants or pay invoices out of MRI's software system, and the necessity to use Windows-based, rather than web-based, workarounds, which resulted in lost productivity.

{¶32} In light of the above, the trial court's finding that MRI failed to perform its contractual obligations was supported by competent, credible evidence and was not unreasonable, arbitrary, or unconscionable. Accordingly, the first and second assignments of error are overruled.

**Unjust Enrichment**

{¶33} In the third assignment of error, MRI claims that the trial court erred in failing to find unjust enrichment. In order to succeed on a claim for unjust enrichment, MRI was required to show: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. *Just Like Us Family Enrichment Ctr. v. Easter*, 8th Dist. Cuyahoga No. 94180, 2010-Ohio-4893, ¶ 13, citing *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984).

---

[4] MRI argued that the majority of support cases resulted from user errors.

**{¶34}** An unjust enrichment claim is an alternative to a breach of contract claim. "'Unjust enrichment operates in the absence of an express contract or a contract implied in fact to prevent a party from retaining money or benefits that in justice and equity belong to another.'" *Kwikcolor Sand v. Fairmount Minerals Ltd.*, 8th Dist. Cuyahoga No. 96717, 2011-Ohio-6646, ¶ 14, quoting *Gallo v. Westfield Natl. Ins. Co.*, 8th Dist. Cuyahoga No. 91893, 2009-Ohio-1094, ¶ 19. Absent bad faith, fraud, or some other illegality, an equitable action for unjust enrichment cannot exist where there is a valid and enforceable written contract. *Id.*, citing *id.*

**{¶35}** MRI has continuously argued that they had a valid, enforceable contract with West Oaks. We agree; MRI just failed to perform its contractual obligations. Therefore, MRI cannot now claim unjust enrichment.

**{¶36}** The third assignment of error is overruled. The judgment in favor of West Oaks is affirmed.

## Attorney Fees

**{¶37}** In West Oaks' cross-assignment of error, it argues that the trial court erred when it failed to award attorney fees and costs.

**{¶38}** Ohio courts follow the "American rule," which requires that each party involved in litigation pay his or her own attorney fees. *McConnell v. Hunt Sports Ent.,* 132 Ohio App.3d 657, 699, 725 N.E.2d 1193 (10th Dist.1999), citing *Sorin v. Bd. of Edn. of Warrensville Hts. School Dist.*, 46 Ohio St.2d 177, 179, 347 N.E.2d 527 (1976). There are three well-recognized exceptions to this rule: (1) where statutory provisions specifically provide that a prevailing party may recover attorney fees, (2) where there has been a finding of bad faith, and (3) where the contract between the parties provides for fee shifting. *Pegan v. Crawmer*, 79 Ohio St.3d 155, 156, 679 N.E.2d 1129 (1997). Fee-shifting contractual provisions are generally enforceable "'so

long as the fees awarded are fair, just and reasonable as determined by the trial court upon full consideration of all of the circumstances of the case.'" *Southeast Land Dev., Ltd. v. Primrose Mgt., L.L.C.*, 193 Ohio App.3d 465, 2011-Ohio-2341, 952 N.E.2d 563, ¶ 15 (3d Dist.), quoting *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396.

**{¶39}** In this case, Section 10.16 of the Agreement provided:

Legal Fees and Costs. In the event of a dispute between the Parties regarding the enforcement of the Agreement, the prevailing party in such dispute will be entitled to collect from the other party the prevailing party's reasonable legal fees and costs.

**{¶40}** The trial court found that the parties had a legal and binding contract, but determined that each party would bear its own costs; that finding was in error. Therefore, the case is remanded to the trial court for a hearing to award West Oaks reasonable attorney fees and costs.

**{¶41}** The cross-assignment of error is sustained.

**{¶42}** Judgment is affirmed in part and reversed in part. Case is remanded for a hearing on attorney fees and costs.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

MARY EILEEN KILBANE, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR