[Cite as *125th & St. Clair St. Co., L.L.C. v. Adams*, 2021-Ohio-4013.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

125TH & ST. CLAIR STREET CO., L.L.C.,  :

     Plaintiff-Appellee,  :

                                  No. 110291

     v.  :

BERNARD ADAMS, ET AL.,  :

     Defendants-Appellants.  :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 10, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-910778

---

***Appearances:***

Ulmer & Berne, L.L.P., Steven S. Kaufman, Chad D. Cooper, and Sara S. Dorland, *for appellee.*

E. Yvonne Harris, *for appellants.*

MICHELLE J. SHEEHAN, J.:

{¶ 1} This appeal involves an option to purchase a 99-year ground lease. The lease provides that the tenant is entitled to exercise the option to purchase if it has "faithfully and fully" performed all its obligations under the lease. After a bench trial, the trial court found the tenant satisfied the condition precedent to an exercise

of the option to purchase. Upon a review of the record and applicable law, we conclude the court's judgment is not against the manifest weight of the evidence and, therefore, affirm the judgment.

**Substantive Facts and Procedural History**

{¶ 2} Around 1996, Giltz and Associates ("Giltz"), the predecessor in interest of plaintiff-appellee 125th St. Clair Street Company L.L.C. ("125th"), was interested in constructing a building for a Save a Lot store at a site located on St. Clair Avenue. Giltz had acquired approximately 75% of the ground for the construction of the store. The remaining ground (parcel #110-06-094 and parcel #110-06-009) ("the subject property") is owned by defendant-appellant Bernard Adams ("Adams"). After negotiation, Giltz and Adams entered into a 99-year triple-net ground lease in January 1996. The 1996 lease was subsequently amended, and the parties entered into an amended lease ("the lease") in August 1997. Under the terms of the lease, Giltz prepaid $300,000, which represented the rent for the first 240 months. After the first 240 months, beginning in August 2017, the monthly rent amount would be $3,180 for the next 60 months.

{¶ 3} After the parties entered into the lease, Giltz constructed a building on the site and leased it to Save a Lot. Subsequently, in February 2002, Giltz assigned the lease to 125th.[1]

---

[1] 125th is a single asset company formed in 2000 for the purpose of owning the Save a Lot store. Giltz is a 50 percent member of 125th.

{¶ 4} The lease includes an option to purchase the subject property after 240 months. Section 23.1 of the lease sets forth the tenant's option to purchase as follows:

> On and after the last day of the 240th month of this Lease, and provided that Tenant shall have faithfully and fully performed all obligations imposed upon it under this Lease, Tenant shall have the right and option to purchase the Demised Premises [referring to the subject property] from Landlord.

{¶ 5} The controversy in this case concerns the term "faithfully and fully performed all obligations," the condition precedent for the tenant's right to purchase the subject property. There is no definition of "faithful and full performance" within Article 23 or elsewhere in the lease.

{¶ 6} Under the triple net lease, the tenant is to pay all the real estate taxes of the property. 125th failed to pay the real estate taxes from 2006 to 2009. The delinquent tax payment totaled $106,527. As a result, in July 2009, the county commenced a foreclosure action to recover the taxes owed. Subsequently, U.S. Bank, the lending bank for the subject property, paid the outstanding real estate taxes in 2010 and the county dismissed the foreclosure action.

{¶ 7} Before the foreclosure action was dismissed, in June 2010, Adams filed an action against Giltz for breach of contract, seeking to recover the real estate taxes owed as well as attorney fees he incurred in the foreclosure action. The trial court dismissed the breach of contract claim because the breach had been cured, and also found Adams failed to properly provide notice of default as set forth in the lease. The trial court's judgment was affirmed by this court.

{¶ 8} Several months after the expiration of the 240-month period, on January 30, 2018, 125th sent a letter to Adams expressing its intention in exploring the option to purchase pursuant to Section 23.1 of the lease and advising that each party was to secure an appraisal of the subject property pursuant to the option-to-purchase provision.

{¶ 9} On February 21, 2018, Adams responded that the purchase option is not enforceable because of 125th's "previous defaults under the Lease, including the failure to pay real estate taxes and rent on time." Despite Adams's response, on September 11, 2018, 125th executed the option to purchase and provided Adams with written notice. On September 19, 2018, Adams responded to the notice and reiterated his position that the option to purchase is not enforceable because in addition to the failure to pay real estate taxes for several years, 125th also failed to timely provide a certificate of insurance and rendered the August 2018 rent late.

{¶ 10} On February 8, 2019, 125th filed the instant complaint against Adams, alleging a breach of contract by Adams for refusing to perform under the option to purchase provision. 125th sought a declaratory judgment that it was entitled to purchase the subject property in accordance with the lease terms and requested an order for specific performance of the option to purchase provided in the lease.

{¶ 11} Adams filed an answer and a counterclaim, which sought unpaid rent in 1996 and 1997 in the amount of $72,201, and $112,050 for "unwarranted judgment lien against Defendant." Adams also requested a "specific interpretation of Article 23 of the Lease to allow Defendant to sell or not to sell his property to

whomever he chooses."  125th filed a partial motion to dismiss the counterclaim regarding the unpaid rent of $72,201.  The trial court granted the motion.  125th then filed an answer to the counterclaim.[2]

**{¶ 12}** 125th then filed a motion for summary judgment and motion for default judgment.  The trial court denied both motions.  The court found summary judgment was improper because of the existence of genuine issues of material fact in this case.  The matter was then tried to the bench.

**Trial**

**{¶ 13}** As the trial court noted in its judgment entry, counsel for the parties stipulated at trial that 125th's failure to timely pay real estate taxes is the only ground on which Adams claimed 125th is not permitted to exercise the option to purchase.

**{¶ 14}** 125th maintained the lease obligations were fully satisfied at the time it exercised the option to purchase.  It argued that "faithful and full performance" simply required that at the time 125th exercised the option, there was no uncured and properly noticed default, citing Section 16.1(c) of the lease.[3]  125th argued that

---

[2] 125th subsequently amended its complaint to add 12432 St. Clair L.L.C. as a defendant after learning that Adams conveyed the property to the company in October 2018. We refer to Adams and 12432 St. Clair L.L.C. collectively as "Adams."

[3] Section 16.1(c) provides that the tenant's failure to perform a lease term and continuance of that failure 60 days after the landlord's written notice constitutes a default, but the failure does not constitute a default if the tenant proceeds to cure the failure within reasonable diligence and in good faith; the time period, however, cannot be extended beyond 120 days.  In addition to Section 16.1(c), 125th also cited Section 5.7 of the lease, which required Adams to give notice of any default to the mortgagee bank, in order to allow the mortgagee an opportunity to cure the alleged default within 60 days.

Adams never provided a notice of default pursuant to the terms of the lease regarding its failure to pay the real estate taxes.

{¶ 15} Adams maintained that 125th failed to "faithfully and fully" perform its obligations in failing to pay real estate taxes from 2006 to 2009. Adams argued that whether 125th cured the default was irrelevant because the provision requires "faithful and full" performance.

{¶ 16} Harry Giltz, president of Giltz & Associates, testified that the option to purchase was in the lease to avoid the continuation of the split ownership of the lot for the Save a Lot store. He testified that 125th was current on rent and taxes and he had engaged an appraiser to establish the value of the subject property pursuant to the option-to-purchase provision of the lease.

{¶ 17} Giltz acknowledged that 125th failed to pay real estate taxes from 2006 to 2009, which resulted in a foreclosure action filed by the county. He testified that the failure to pay the real estate taxes was due to an extremely tough market at the time and a lack of proper monitoring of the tax bills caused by the loss of two staff members. When he found out the tax payments were late, he negotiated with U.S. Bank, which advanced the tax payments in 2010 and created an escrow account handled by a third party. Since then, 125th had not missed a tax payment.

{¶ 18} F. Brock Walter, a mortgage broker involved in the instant lease transaction in 1996, testified that the lease is unusual in that there is a divided ownership of the ground on which a building sits, which makes financing of the property difficult.

**{¶ 19}** Bernard Adams testified that because 125th did not pay the real estate taxes on time for a period of time, it had forfeited its right to exercise the option to purchase despite the fact that U.S. Bank had paid the outstanding taxes of $106,527. He testified that when the county filed the foreclosure action, he hired a lawyer to protect his interest and incurred legal fees. He subsequently filed his own lawsuit against 125th, seeking the amount of the back taxes due and attorney fees he incurred in the foreclosure action. He acknowledged that the lease required him to notify the mortgage bank of a default so that the bank could cure the default.

**Trial Court Judgment**

**{¶ 20}** The trial court found that 125th failed to pay real estate taxes from 2006 to 2009 due to financial hardship and economic downturn, but the outstanding tax bill was subsequently paid in full. The trial court also found that the evidence did not establish Adams notified 125th of being in default of nonpayment of real estate taxes, as required by the lease terms.[4] The trial court therefore

---

[4] The relevant portion of the trial court's judgment states:

> The testimony at trial revealed that Plaintiff failed to pay real estate taxes from 2006-2009 due to financial hardship and economic downturn. Defendant contends that Plaintiff's failure to stratify the tax bill results in Plaintiff's inability to enforce the option to purchase provision. The evidence and testimony failed to establish that Defendant notified Plaintiff of being in breach or default as a result of non-payment of real estate taxes, as is required under the 1997 Lease terms. Further, while plaintiff failed to pay the real estate taxes for a period spanning from 2006 to 2009, the evidence and testimony demonstrated that the outstanding tax bill was subsequently paid in full.

concluded 125th is entitled to specific performance of the option to purchase and also to a credit to the purchasing price for the rents paid since exercising the option.

**Appeal**

{¶ 21} On appeal, Adams raises six assignments of error:

I.  The trial court erred in ruling that the appellee could enforce an unambiguous option to purchase, even though appellee failed to faithfully and fully perform all obligations imposed on it under the lease, specifically its failure to pay real estate taxes for the years 2006, 2007, 2008, & 2009, which resulted in the appellant having to defendant a tax foreclosure lawsuit regarding the Demised Property.

II.  The trial court erred in ruling that the appellee had the right to enforce the option to purchase in the lease even though the failure of the appellee to pay for four (4) years of taxes resulted in substantial personal and financial consequences for the appellant and the property.

III.  The trial court erred in allowing the appellees the right to exercise the option to purchase because it appears that the appellants may not have formally notified them that a tax foreclosure sale had been filed against the appellant even though the appellee caused the action and admitted to not fully and faithfully performing all obligations under the lease.

IV.  The trial court erred in allowing the appellees the right to exercise the option to purchase under the lease on the ground that the outstanding taxes were eventually paid by the mortgage company.

V.  The trial court abused its discretion and committed a reversible error when it stated that the appellee would be entitled to specific performance and a credit to the purchase price for the rents paid to the appellant since exercising the option.

VI.  The trial court erred in its findings that appellee's inability to pay the real estate taxes that they were contracted to pay was due to financial hardship and economic downturn when there was no evidence presented to verify these claims and moreover it is irrelevant.

**{¶ 22}** Although Adams raises six assignments of error, they all concern the trial court's determination that 125th fully and faithfully performed the obligations imposed under the lease and is, therefore, entitled to enforce the option to purchase. Under these assignments of error, Adams argues 125th failed to faithfully and fully perform all obligations under the lease because it failed to pay real estate taxes between 2006 and 2009, resulting in a foreclosure action filed by the county against Adams. Because the arguments under the assignments of error are interconnected, we address them jointly for ease of discussion.

**Standard of Review**

**{¶ 23}** In this case, the trial court rendered its judgment following a bench trial. "[I]n a civil appeal from a bench trial, we apply a manifest weight standard of review, guided by a presumption that the trial court's findings are correct." *3637 Green Rd. Co. v. Specialized Component Sales Co.*, 2016-Ohio-5324, 69 N.E.3d 1083, ¶ 19 (8th Dist.), citing *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 79-80, 461 N.E.2d 1273 (1984). *See also Benton Village Condo. Owners Assn. v. Bridge*, 8th Dist. Cuyahoga No. 106892, 2018-Ohio-4896, ¶ 13. "'Following a bench trial, a reviewing court will generally uphold a trial court's judgment as long as the manifest weight of the evidence supports it — that is, as long as "some" competent and credible evidence supports it.'" *Patel v. Strategic Group, L.L.C.*, 2020-Ohio-4990, 161 N.E.3d 42, ¶ 20 (8th Dist.), quoting *MRI Software, L.L.C. v. W. Oaks Mall FL, L.L.C.,* 2018-Ohio-2190, 116 N.E.3d 694, ¶ 12 (8th Dist.). *See also Huntington Natl. Bank v. Miller*, 10th Dist. Franklin No. 14AP-586, 2016-Ohio-5860, ¶ 13.

**Analysis**

{¶ 24} The controversy in this appeal concerns the contractual term that gives the tenant the option to purchase the subject property provided that the tenant has "faithfully and fully" performed all lease obligations. It is not in dispute that the tenant's "faithful and full" performance is the condition precedent to the right to exercise the option to purchase, although the words "faithfully and fully," chosen by the parties themselves, are not defined within the option-to-purchase provision or elsewhere in the lease, or defined by case law. On appeal, Adams does not claim these words are ambiguous but rather disagrees with the trial court's application of this contractual term and its determination that 125th has satisfied the term.

{¶ 25} Reviewing the trial court's judgment after a bench trial under a manifest-weight standard, we find there is competent, credible evidence to support it. Harry Giltz testified that the late tax payments were due to a difficult market condition and a failure to monitor the tax bills due to staff shortage, but the outstanding taxes were subsequently paid in full by 125th's lending bank, which created an escrow account to handle the tax payments. 125th has been current in its real estate tax payments and has also been making monthly rent payments after the 240-month prepayment period.

{¶ 26} In determining that 125th "faithfully and fully" performed its lease obligations over the course of 21 years, the trial court found credible, and took into consideration, Harry Giltz's testimony regarding the circumstances surrounding the missed tax payments between 2006 to 2009. We will give deference to the findings

of the trial court in a bench trial because "the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal*, 10 Ohio St. at 80, 461 N.E.2d 1273.

{¶ 27} While the evidence indicates that 125th ultimately fulfilled all its obligations under the lease, Adams essentially asks the court to find that the option-to-purchase provision requires the tenant to "faithfully and fully" perform its obligations in a timely fashion *at any given time.*[5] "When reviewing contract language, courts are required to give plain language its ordinary meaning and may not read language or terms into a contract." *Gray-Jones v. Jones*, 137 Ohio App.3d 93, 105, 738 N.E.2d 64 (10th Dist.2000), citing *Miller v. Marrocco*, 28 Ohio St.3d 438, 439, 504 N.E.2d 67 (1986). The court "may not delete or add words to a contract when determining the parties' rights and obligations under it." *Merz v. Motorists Mut. Ins. Co.*, 12th Dist. Butler No. CA2006-08-203, 2007-Ohio-2293, ¶ 54, citing *DiMarco v. Shay*, 154 Ohio App.3d 141, 148, 2003-Ohio-4685, 796 N.E.2d 572 (10th Dist.). By the parties' own choice, the option-to-purchase provision does not further qualify "faithful and full" performance. Given the length of the lease and that the tenant's deficient performance had long been cured, we

---

[5] At trial, Adams's counsel asked Harry Giltz four questions regarding whether the tenant "faithfully and fully performed all obligations" — in 2006, 2007, 2008, and 2009. Harry Giltz answered "no" to each of these questions. On appeal, Adams points to the testimony as the tenant's admission that it failed to faithfully and fully performed its obligations under the lease.

cannot say that the trial court's determination that the contractual term was satisfied is against the manifest weight of the evidence.

{¶ 28} In its decision, the trial court also found the option to purchase enforceable because Adams "failed to establish that Defendant notified Plaintiff of being in breach or default as a result of non-payment of real estate taxes."[6]  While Section 23.1 itself does not refer to the word "default," other sections of the lease set forth the procedure for the landlord to give notice to the tenant and the mortgagee bank when the tenant fails to perform a lease term, for the purposes of allowing the tenant to cure the deficiency.  Therefore, the trial court did not err in taking into account whether a notice of default was properly established pursuant to the lease terms in determining whether the tenant "faithfully and fully" performed its obligation.

{¶ 29} After finding the option to purchase enforceable, the trial court ordered specific performance of the provision.  As part of its order of specific performance, the court also found that 125th is entitled to have the rental payments made since exercising the option credited to the purchase price.  Adams argues the trial court's order is an abuse of discretion.

---

[6] The record reflects that, in response to the foreclosure action, Adams filed an action against 125th over the nonpayment of the real estate taxes, claiming 125th breached the lease.  The trial court in that case found the breach of contract claim failed because a notice of default was never given to the mortgagee bank as required by the lease. The trial court's judgment was affirmed by this court.

**{¶ 30}** "'Specific performance of contracts is a matter resting in the sound discretion of the court, not arbitrary, but controlled by principles of equity, on full consideration of the circumstances of each particular case.'" *Sandusky Properties v. Aveni*, 15 Ohio St.3d 273, 275, 473 N.E.2d 798 (1984), quoting *Spengler v. Sonnenberg*, 88 Ohio St. 192, 203, 102 N.E. 737 (1913). The standard of review is "whether the trial court, sitting as a court of equity, abused its discretion." *Id.* "'Decisions requiring equitable balancing should not be based solely on the cold appellate record. Trial judges are far more able than appellate courts to fairly balance equities.'" *Prokos v. Hines*, 4th Dist. Athens Nos. 10CA51 and 10CA57, 2014-Ohio-1415, ¶ 140, quoting *State v. West*, 66 Ohio St.3d 508, 513, 613 N.E.2d 622 (1993) (Moyer, C.J., concurring in judgment only).

**{¶ 31}** "The equitable remedy of specific performance is available 'when the promisor's failure to perform constitutes a breach of the option contract, and a remedy for the breach which is ordinarily available at law, such as money damages, will not afford the promisee adequate relief for a loss arising from the breach.'" *Four Howards, Ltd. v. J & F Wenz Rd. Invest., L.L.C.*, 179 Ohio App.3d 399, 2008-Ohio-6174, 902 N.E.2d 63, ¶ 68 (6th Dist.), quoting *Gehret v. Rismiller*, 2d Dist. No. 06CA1705, 2007-Ohio-1893, ¶ 14. Here, the trial court found 125th satisfied the condition precedent and is entitled to exercise the option to purchase and Adams breached the provision in refusing to acknowledge the exercise of the option and obtain an appraisal of the property as required by Article 23 of the lease. Recognizing the trial court's role in equitable balancing, we are unable to find the

court abused its discretion in ordering the remedy of specific performance of the option to purchase and giving the tenant credit towards the purchase price for the rents it paid since exercising the option.

{¶ 32}For all the forgoing reasons, we overrule all six assignments of error and affirm the trial court's judgment.

{¶ 33} Judgment affirmed.

It is ordered that appellee recover of appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MICHELLE J. SHEEHAN, JUDGE

FRANK D. CELEBREZZE, P.J., and
EILEEN A. GALLAGHER, J., CONCUR