[Cite as *Loury v. Westside Automotive Group*, 2022-Ohio-3673.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

PAMELA LOURY,                                                :

      Plaintiff-Appellant/                           :
      Cross-Appellee,                                 :
                                       No. 111319

      v.                                                      :

WESTSIDE AUTOMOTIVE
GROUP, ET AL.,                                              :

      Defendants-Appellees/                        :
      Cross-Appellants.                              :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 13, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-926662

---

### *Appearances:*

Joanne Brown, *for appellant and cross-appellee.*

Brouse McDowell, LPA, Clair E. Dickinson, Joseph T. Dattillo, Anastasia J. Wade, and Alexandra V. Dattillo, *for appellees and cross-appellants.*

EILEEN T. GALLAGHER, J.:

{¶ 1} Plaintiff-appellant/cross-appellee, Pamela M. Loury ("Loury"), appeals a judgment, rendered following a bench trial, that did not award her damages

against defendant-appellees/cross-appellants, Westside Automotive Group, March Hodge Lamarch, and March Hodge Lamarch Cleveland L.L.C. (collectively referred as "Westside"). Loury claims the following errors:

> 1. The trial court erred in not ruling that defendant-appellee violated the consumer sales practices act.

> 2. The trial court erred in not awarding statutory damages for defendant-appellees' sales practices act violation.

> 3. The trial court erred in not awarding actual damages because plaintiff-appellant could have rescinded the contract.

> 4. The trial court erred in not allowing for attorney fees damages for defendant-appellees' consumer sales practices act violation.

{¶ 2} Westside filed a cross-appeal of the trial court's judgment and claims the following error:

> The trial court incorrectly determined that Westside breached its contract with Ms. Loury by canceling it when it was unable to find financing for her.

{¶ 3} We affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 4} Loury and her brother, Bruce Edwards ("Edwards"), visited Westside's automobile dealership on December 18, 2017, to purchase a 2016 Cadillac SUV they had seen advertised. The SUV was already sold when they arrived, and a salesperson showed them a 2017 Cadillac XTS sedan ("the Cadillac" or "the car") instead. Loury and Edwards test-drove the Cadillac and liked it, but they wanted a moonroof installed. Westside agreed to install a moonroof, and Loury agreed to buy the car.

{¶ 5} To complete the transaction, Loury executed several documents, including a "Conditional Delivery Agreement" and a "Retail Installment Sales Contract." The Conditional Delivery Agreement states that Westside will deliver the car to Loury on the date she signs the agreement, but it also provides that the transaction is contingent on Loury obtaining financing. The Conditional Delivery Agreement provides, in relevant part:

> a. The Dealership (also called "we", "us", and "our") agrees to deliver the vehicle identified above (the "Vehicle") to you on the date this Conditional Delivery Agreement is signed by us and you. You understand that it may take a few days for us to verify your credit and to obtain financing directly from the third party lender whose loan documents we have had you sign (the "Lender") or, if you signed, a Retail Installment Sale or Lease Contract with us, to assign the Contract to a third party financial institution. You agree that we have 30 days to obtain financing from the Lender or to assign the Retail Installment Contract. If we are unable to obtain financing from the Lender or to assign the Contract to any one of the financial institutions with whom we regularly do business, within this period of time, you or we may cancel the sale of the Vehicle. If the sale is canceled, the Lender's loan documents or Contract you have signed will be null and void and of no effect. This limited right to cancel will end at the earlier of (i) the date we obtain financing from the Lender or assign the Contract or (ii) the end of the stated time period.

{¶ 6} In a separate provision, the agreement provides that the sale of the car is contingent on Loury's ability to obtain financing. The second paragraph of the Conditional Delivery Agreement states, in relevant part:

> b. You understand that the consummation of the transaction is specifically contingent on your credit worthiness and your ability to be financed for the amount stated. * * * You understand that the Dealership does not control your credit rating for financing purposes and did not guarantee that you would be financed or the finance rate.
> * * *

{¶ 7} Loury signed the Conditional Delivery Agreement on December 18, 2017. On that same day, Loury also executed a "Retail Installment Sales Contract" that set forth the amount Loury was borrowing to finance the purchase as well as the interest rate, the amount financed, the total number of payments, and finance charges. The Retail Installment Sales Contract contains the following "Limited Right to Cancel" provision:

> You agree that we have 30 days from the date you sign this contract to assign this contract. If we are unable to assign this contract within this time period, you or we may cancel this contract. This limited right to cancel will end at the earlier of the date we assign the contract or the end of the stated time period. Please see the back of this contract for important terms of this limited right to cancel.

{¶ 8} Additional information regarding the limited right to cancel on the back of the contract provides, in relevant part:

> You agree that we have the number of days stated on the front of this contract to assign this contract. If we are unable to assign this contract within this period of time to any of one of the financial institutions with whom we regularly do business, you or we may cancel this contract. This limited right to cancel will end at the earlier of the date we assign the contract or the end of the stated period of time.

{¶ 9} Finally, the agreements provide that if either party canceled the agreement, Loury was required to return the car to Westside and to pay Westside for the mileage accrued while it was in her possession.

{¶ 10} Loury took possession of the car on December 18, 2017, and the moonroof was installed shortly thereafter in January 2018. As the 30-day right-to-cancel deadline was approaching, the bank to which Westside submitted the Retail Installment Sales Contract for financing advised Westside that Loury would have to

sign a new Retail Installment Sales Contract before it would approve financing for her purchase. (Tr. 70.) The only difference between the original Retail Installment Sales Contract and the new Retail Installment Sales Contract was the date the first payment was due; under the original contract the first payment was due on February 1, 2018, and under the revised contract the first payment was due on March 15, 2018.

{¶ 11} Ghassan Cherry ("Cherry"), a sales representative from Westside, called Loury and informed her of the need to sign the revised Retail Installment Sales Contract. She indicated she would come to the dealership to sign the revised agreement, but she never came. Cherry called Loury again, but this time Loury refused to sign the revised Retail Installment Sales Contract. Cherry explained to Loury that if she did not sign the revised agreement, Westside would have to cancel the sale.

{¶ 12} On January 24, 2018, Loury's lawyer faxed a letter to Westside demanding that Westside deliver a certificate of title or memorandum of title ("title") to the Cadillac to Loury. Westside's counsel advised Loury's lawyer that Westside was terminating the sale agreement because Loury refused to sign the revised Retail Installment Sales Agreement that would have provided the financing necessary to consummate the transaction. Westside's counsel emailed the notice of termination of the sale to Loury's counsel on February 2, 2018, 46 days after Loury signed the Conditional Delivery Agreement and the original Retail Installment Sales Contract. Westside's lawyer explained that if Loury provided Westside an opportunity to pick up the car, it would waive the mileage fee it was entitled to

receive. Loury, through counsel, cooperated with Westside's repossession of the vehicle.

{¶ 13} Loury later filed a complaint against Westside, alleging fraud and multiple violations of the Consumer Sales Practices Act, R.C. Chapter 1345. In the prayer for relief, Loury requested a declaration that Westside engaged in unfair, deceptive, and unconscionable sales practices, actual and statutory damages, treble damages, and attorney fees.

{¶ 14} At a bench trial, Cherry and Joseph Stefanini ("Stefanini"), a vice president of Westside, testified that Westside canceled the sale with Loury due to lack of financing after she refused to sign the revised Retail Installment Sales Contract. Loury testified that after she took possession of the car, she investigated the car's history on CARFAX.com and discovered that Westside had misrepresented the car's history. According to Loury, Westside never informed her that the Cadillac had been used as a rental car or that it had been involved in an accident.

{¶ 15} Cherry and Stefanini each testified that neither of them were aware that the car had been used as a rental or that it had been in an accident. Westside purchased the vehicle from Manheim, an auction house, and Westside pays for a preinspection before it buys any cars from Manheim. (Tr. 88.) Cherry also explained that Westside operates 17 stores and purchases a large volume of cars from Manheim such that it would not be in Manheim's interest to make misrepresentations regarding a car's history or condition. (Tr. 90-91.) Cherry further stated that if an accident had been reported on CARFAX, Manheim would

have known about it. (Tr. 91.) Loury did not present any documents from CARFAX at trial verifying her claim that the car had been a rental or that it had been involved in an accident. (Tr. 66-67.)

{¶ 16} Loury also claimed she was forced to rent a car after her temporary tags expired because Westside refused to provide her a memorandum of title, which would have allowed her to obtain license plates for the car. She also alleged that Westside damaged her credit score by requesting her credit report 17 times in one day. However, Loury had no documentary evidence to establish the cost of her rental payments. She also failed to present evidence of a change in her credit score. (Tr. 62-63.)

{¶ 17} Following the trial, the court rendered a decision finding that Westside failed to cancel the contract within the 30-day right to cancel period set forth in the contracts. The trial court nevertheless did not award any damages to Loury because she failed to provide any evidentiary support for her damages claims. Now both Loury and Westside appeal from the trial court's judgment.

## II. Law and Analysis

### A. Standard of Review

{¶ 18} An appellate court generally reviews a trial court's judgment following a bench trial under a manifest weight standard of review. *Huntington Natl. Bank v. Slodov*, 8th Dist. Cuyahoga No. 110113, 2021-Ohio-2932, ¶ 47. In determining whether a verdict in a civil bench trial is against the manifest weight of the evidence, we examine the entire record, weigh the evidence and all reasonable inferences,

consider the witnesses' credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the verdict must be reversed and a new trial ordered. *Sonis v. Rasner*, 2015-Ohio-3028, 39 N.E.3d 871, ¶ 53 (8th Dist.), citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). In weighing the evidence, we are guided by a presumption that the findings of the trier of fact are correct. *Id.* at ¶ 54, citing *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). Thus, "a reviewing court will generally uphold a trial court's judgment as long as the manifest weight of the evidence supports it — that is, as long as 'some' competent and credible evidence supports it." *Patel v. Strategic Group*, L.L.C., 2020-Ohio-4990, 161 N.E.3d 42, ¶ 20 (8th Dist.), quoting *MRI Software, L.L.C. v. W. Oaks Mall FL, L.L.C.*, 2018-Ohio-2190, 116 N.E.3d 694, ¶ 12 (8th Dist.).

{¶ 19} However, the interpretation of statutes and written contracts are questions of law subject to de novo review. *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, ¶ 9 (statutory interpretation is a matter of law reviewed de novo); *Hyde Park Circle, L.L.C. v. Cincinnati*, 2016-Ohio-3130, 66 N.E.3d 99, ¶ 15 (1st Dist.) (the interpretation of contracts is reviewed de novo).

{¶ 20} Our review involves the interpretation of the parties' contracts and applicable statutory provisions as well as a review of the trial transcript. We, therefore, apply a manifest weight standard of review to the trial court's factual findings and a de novo review of the trial court's interpretation of the parties' contracts and applicable law.

## B. Consumer Sales Practices Act

{¶ 21} In the first assignment of error, Loury argues the trial court erred in finding that Westside did not violate the Ohio Consumer Sales Practices Act ("CSPA"). She contends that Westside violated the CSPA by (1) failing to transfer title to the 2017 Cadillac XTS sedan to her, (2) misrepresenting that she had been approved for financing, and (3) failing to provide mandatory notices following repossession of the car.

{¶ 22} The CSPA is a remedial law, designed to compensate for inadequate traditional consumer remedies, and must be liberally construed to achieve its remedial purpose. *Einhorn v. Ford Motor Co.*, 48 Ohio St.3d 27, 29, 548 N.E.2d 933 (1990). The law prohibits unfair or deceptive acts or practices and unconscionable acts or practices by suppliers in consumer transactions. R.C. 1345.02(A) and 1345.03(A); *Einhorn*, 48 Ohio St.3d at 29, 548 N.E.2d 933.

{¶ 23} R.C. 1345.01(D) defines the term "consumer" as "a person who engages in a consumer transaction with a supplier." R.C. 1345.01(D). A "supplier" is a "seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions * * *." R.C. 1345.01(C). A "consumer transaction" is defined as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." R.C. 1345.01(A). And, "the CSPA defines 'unfair or deceptive consumer sales practices' as those that mislead consumers about the

nature of the product they are receiving, while 'unconscionable acts or practices' relate to a supplier manipulating a consumer's understanding of the nature of the transaction at issue." *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 24.

{¶ 24} It is undisputed that Loury is a consumer and that Westside is a supplier as those terms are defined in the CSPA. It is also undisputed that a consumer purchase of a car from a dealership is a consumer transaction. The issue in this case is whether Westside engaged in any unfair or deceptive sales practices.

{¶ 25} Proof of intent is not required to prove a deceptive act under R.C. 1345.02. *Garber v. STS Concrete Co.*, 2013-Ohio-2700, 991 N.E.2d 1225 (8th Dist.). Whether an act is deceptive depends on how the consumer viewed the supplier's act or statement. *Tsirikos-Karapanos v. Ford Motor Co.*, 2017-Ohio-8487, 99 N.E.3d 1203 (8th Dist.). However, courts apply a reasonableness standard in determining whether an act amounts to deceptive, unconscionable, or unfair conduct. *McPhillips v. United States Tennis Assn. Midwest*, 11th Dist. Lake No. 2006-L-187, 2007-Ohio-3594, ¶ 27, citing *Struna v. Convenient Food Mart*, 160 Ohio App.3d 655, 2005-Ohio-1861, 828 N.E.2d 647, ¶ 15 (8th Dist.) (stating that court must use a reasonableness standard when evaluating alleged unfair or deceptive act or practice). The relevant inquiry is whether a reasonable consumer would have been deceived by the supplier's act or statement. *Shumaker v. Hamilton Chevrolet, Inc.*, 184 Ohio App.3d 326, 2009-Ohio-5263, 920 N.E.2d 1023, ¶ 19, 30 (4th Dist.) (evaluating act from a reasonable consumer standpoint); *Knoth v. Prime Time*

*Marketing Mgt., Inc.*, 2d Dist. Montgomery No. 20021, 2004-Ohio-2426, ¶ 31 (court must view act or practice from the consumer's perspective); *Struna* at ¶ 15 (holding that court must use a reasonableness standard when evaluating alleged unfair or deceptive act or practice).

### 1. Failure to Transfer Title

{¶ 26} R.C. 1345.02(B) provides a nonexhaustive list of practices that are considered unfair or deceptive. *Grgat v. Giant Eagle, Inc.*, 2019-Ohio-4582, 135 N.E.3d 846, ¶ 13 (8th Dist.). As relevant here, R.C. 1345.02(B)(5) provides that a supplier commits an unfair or deceptive act if the supplier represents that "the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not[.]"

{¶ 27} Loury contends that Westside committed an unfair and deceptive act by delivering the vehicle to her without transferring title to the vehicle. It is undisputed that Westside delivered possession of the vehicle to Loury. Thus, the question is whether a reasonable person would believe that she was entitled to keep the car and receive its title under the circumstances presented in this case.

{¶ 28} As previously stated, the parties' Conditional Delivery Agreement provides that Loury is entitled to take immediate possession of the car while Westside endeavors to assign the Retail Installment Sale Contract to a bank for financing. The agreement further provides that if Westside is unable to obtain financing within 30 days, then the contract may be canceled by either Westside or Loury. The agreement then provides that the "limited right to cancel will end at the

earlier of (i) the date [Westside] obtain[s] financing from the Lender or assign[s] the Contract or (ii) the end of the stated time period." Because Westside did not cancel the contract within the 30-day time period, Loury asserts that Westside should have transferred title to the car to her despite the fact that she was unable to obtain financing to pay for it. Indeed, the trial court concluded that because Westside did not cancel the contract within the 30-day period, it waived its right to cancel the contract.

{¶ 29} The plain language of the limited right to cancel suggests that unless the contract is canceled within 30 days, cancellation is no longer an option. But such a conclusion would lead to an absurd result if, by the end of the 30 days, the buyer had neither paid for the car nor been able to obtain financing to purchase the car. We cannot reasonably conclude that Westside intended to give the car to Loury for free in the event that the contract is not timely canceled, and Loury was unable to obtain financing.

{¶ 30} In interpreting contracts, "'[c]ourts must give common words their ordinary meaning unless manifest absurdity would result or some other meaning is clearly evidenced from the face or overall contents of the written instrument.'" *Goss v. USA Cycling, Inc.*, 8th Dist. Cuyahoga No. 111084, 2022-Ohio-2500, ¶ 25, quoting *JP Morgan Chase Bank, Natl. Assn. v. Heckler*, 3d Dist. Union No. 14-12-26, 2013-Ohio-2388, ¶ 20, citing *In re All Kelley & Ferraro Asbestos Cases*, 104 Ohio St.3d 605, 2004-Ohio-7104, 821 N.E.2d 159, ¶ 29.

{¶ 31} The second paragraph of the Conditional Delivery Agreement (following the limited right-to-cancel provision) states:

> You understand that the consummation of the transaction is specifically contingent on your credit worthiness and your ability to be financed for the amount stated.

This language clearly provides that the contract is contingent on Loury obtaining financing. If Loury is unable to obtain financing, the transaction is automatically canceled due to Loury's inability to perform her end of the bargain. This is a more reasonable interpretation of the parties' intentions than a literal interpretation of the limited right-to-cancel language that suggests otherwise. And because it is undisputed that Loury was unable to obtain financing, she was not entitled to keep the car, and Westside was not required to transfer title of the car to her. Therefore, Westside did not commit a deceptive or unfair act by failing to transfer title to the car to Loury.

## 2. Misrepresentation as to Financing Approval

{¶ 32} Loury argues that Westside committed a deceptive and unfair act in violation of the CSPA when it misrepresented that she had been approved for financing when she had not. However, both the Conditional Delivery Agreement and the Retail Installment Sale Contract expressly state that Westside would work to obtain financing following the parties' execution of the contracts and the delivery of the vehicle to Loury. By signing the Conditional Delivery Agreement, Loury agreed she understood the terms of the parties' agreement, including the fact that

the agreement was contingent on Loury obtaining financing. The last paragraph of the Conditional Delivery Agreement states:

> I acknowledge that I have read this Conditional Delivery Agreement, understand and agree to be bound by its terms and conditions.

Thus, Loury knew at the time she executed the parties' agreements that she did not have financing approved and that there was a possibility that their agreement would be canceled due to her failure to obtain financing. There is no evidence in either the trial transcript or in the parties' contracts to suggest that Westside misrepresented that she had been approved for financing.

### 3. Notice Following Repossession

{¶ 33} Finally, Loury argues that Westside violated the CSPA by failing to provide written notice of her redemption rights after it repossessed the vehicle.

{¶ 34} The failure to send the consumer notice of his or her right to redeem collateral is an unfair, deceptive, and unconscionable act in violation of R.C. 1345.02 and 1345.03. *Sonn v. Taylor*, 4th Dist. Athens No. 1527, 1993 Ohio App. LEXIS 5051 (Sept. 28, 1993), citing *Compton v. RPM Auto Sales*, Adams C.P. No. 88-CIV-221 (Feb. 24, 1992). However, Loury was not entitled to redemption because the transaction was never consummated due to lack of financing. This is not a case where a buyer obtained secured financing, made some payments to establish equity in the vehicle, and later defaulted. Because Loury never obtained secured financing, there was no collateral for redemption. She was, therefore, not entitled to written notice of any right of redemption.

{¶ 35} Having found no evidence that Westside violated any provision of the CSPA, the first assignment of error is overruled.

## C. Statutory Damages, Actual Damages, and Attorney Fees

{¶ 36} In the second, third, and fourth assignments of error, Loury argues the trial court erred in denying her claims for statutory damages, actual damages, and for attorney fees.

{¶ 37} R.C. 1345.09(B) provides that where a consumer is unable to prove actual damages, he or she is entitled to an alternative statutory award of $200 for a CSPA violation. *Whitaker v. M.T. Automotive, Inc.*, 111 Ohio St.3d 177, 2006-Ohio-5481, 855 N.E.2d 825, ¶ 17. R.C. 1345.09(F) similarly provides that a consumer is entitled to attorney fees if he or she prevails on a CSPA claim. However, in order to be entitled to statutory damages and attorney fees under the CSPA, the consumer must first establish a violation of the CSPA. As previously stated, Westside did not violate the CSPA. Therefore, Loury is not entitled to either statutory damages or attorney fees.

{¶ 38} Loury nevertheless contends the court erred by failing to award her actual damages. However, Loury failed to present evidence of actual damages. She claimed that Westside damaged her credit score; but she failed to provide any documentary evidence such as a credit report to prove damage to her credit score. She also asserted that she made two car payments, one by check and one with cash. However, Westside demonstrated that the check was never cashed, and Loury

offered no evidence as to what became of the cash she claimed to have mailed to Westside.

{¶ 39} Finally, Loury testified that she was forced to rent a car because Westside refused to transfer title to the car, and she was unable to obtain license plates to allow her to legally drive the car without the title. However, she failed to present any evidence of the cost of the rental car at trial. Moreover, she was not entitled to the Cadillac because she failed to obtain financing. Loury could have rescinded the sale and purchased a different car instead of paying for a rental. This was her decision and was not the fault of Westside.

{¶ 40} Therefore, Loury was not entitled to any damages, and the trial court properly denied her damages claims. The second, third, and fourth assignments of error are overruled.

### D. Breach of Contract

{¶ 41} In the sole cross-assignment of error in Westside's cross-appeal, Westside argues the trial court erred in finding that Westside breached its contract with Loury by canceling it after the 30-day limited right-to-cancel period had expired. In its judgment entry, the court stated, in relevant part:

> Contrary to defendants' position, the cancellation of the Contract did not automatically exercise as a matter of law. The Contract is clear that the right to cancel is optional given the use of "may" and "if" throughout the clause. While the failure to assign the Contract permitted Defendants to cancel the Contract, Defendants opted not to exercise the clause. As such, the clause was waived after the 30 day period. Plaintiff was within her rights not to sign the new paperwork and hold onto the provisions of her contract.

{¶ 42} A literal interpretation of the limited right to cancel, without considering other provisions in the contract, leads to the absurd conclusion that the contract is enforceable even though Loury has not obtained financing to pay for the car. As previously stated, "'[c]ourts must give common words their ordinary meaning unless manifest absurdity would result *or some other meaning is clearly evidenced from the face or overall contents of the written instrument*.'" (Emphasis added.) *Goss*, 8th Dist. Cuyahoga No. 111084, 2022-Ohio-2500, at ¶ 25, quoting *JP Morgan Chase Bank*, 3d Dist. Union No. 14-12-26, 2013-Ohio-2388, at ¶ 20, citing *In re All Kelley & Ferraro Asbestos Cases*, 104 Ohio St.3d 605, 2004-Ohio-7104, 821 N.E.2d 159, at ¶ 29.

{¶ 43} The second paragraph of the Conditional Delivery Agreement expressly provides that the agreement is contingent on Loury's ability to be financed. There is no agreement unless Loury obtains financing. Since Loury failed to obtain financing, the parties' contracts were never consummated, and Westside was entitled to recover the car from Loury's possession. The trial court did not expressly state that Westside breached the parties' contract, but it erred to the extent it concluded that the contract was not void due to lack of financing.

{¶ 44} Therefore, the sole cross-assignment of error is sustained.

{¶ 45} Judgment affirmed.

It is ordered that each party bear their own costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

SEAN C. GALLAGHER, A.J., and
EILEEN A. GALLAGHER, J., CONCUR