[Cite as *Barcy v. St. Vincent Charity Med. Ctr.*, 2022-Ohio-1064.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

KEVIN BARCY,                                  :

     Plaintiff-Appellee,                   :

                                 No. 110584

     v.                                    :

ST. VINCENT CHARITY
MEDICAL CENTER, ET AL.,                       :

     Defendants-Appellants.                :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 31, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-912342

---

### *Appearances:*

Paul Knott, *for appellee.*

Davis & Young, Thomas W. Wright, and Matthew P. Baringer, *for appellant* St. Vincent Charity Medical Center.

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendants-appellants, St. Vincent Charity Medical Center ("SVCMC") and Outreach Professional Services, Inc., d.b.a. St. Vincent Medical Group ("Outreach") (together the "appellants"), appeal from the trial court's partial

judgment in favor of plaintiff-appellee, Kevin Barcy ("Barcy"), following a bench trial. Appellants raise the following assignments of error for review:

1. The trial court erred in issuing declaratory judgment that [appellants] are precluded from billing plaintiff for medical services they provided because [appellants] did not comply with Ohio Adm.Code 5160-1-13.1.

2. The trial court erred in not finding that plaintiff was equitably estopped from challenging the validity and enforceability of the Letters of Protection, Waivers, and Assignments.

{¶ 2} After careful review of the record and relevant caselaw, we affirm the trial court's judgment.

## I. Procedural and Factual History

{¶ 3} SVCMC is a not-for-profit hospital located in Cleveland, Ohio. Outreach is a professional group that employs physicians who have privileges at SVCMC. SVCMC and Outreach are separate and distinct entities that maintain separate locations, employ separate employees, have separate billing offices, and bill separately for services rendered.

{¶ 4} Barcy has a history of severe mental illness, including diagnoses of depression, anxiety, mood disturbance, bipolar disorder, and hallucinations. Due to his condition, Barcy was last employed in 2013, and was approved for social security disability benefits in January 2016. At all relevant time periods, Barcy was a Medicaid-eligible recipient and received Medicaid benefits through "United Healthcare Community Plan - Medicaid."

{¶ 5} On July 24, 2014, Barcy slipped and fell in a grocery store. He suffered a fractured ankle and aggravated a preexisting degenerative disc disease in his lower

back. As a result of his injuries, Barcy filed suit against Marc Glassman, Inc. in Cuyahoga C.P. No. CV-17-881388, wherein Barcy sought compensation for the injuries sustained as a result of his fall.

{¶ 6} Defendant Banyan Finance, L.L.C. ("Banyan") is a Delaware Limited Liability Company that is engaged in the business of purchasing patient account receivables from medical providers. Defendant Red Fern, L.L.C. ("Red Fern") is a former Delaware Limited Liability Company that operated as an agent of Banyan and located medical providers from whom Banyan could purchase patient accounts.

{¶ 7} On August 12, 2014, Banyan entered into a Casualty Medical Plan Provider Agreement (the "Provider Agreement") with Outreach. Under the terms of the Provider Agreement, Banyan agreed to pay Outreach a "guaranteed-minimum reimbursement" for medical services rendered to patients by Outreach. In exchange, Outreach agreed to assign Banyan its full bill for services rendered to such patients. The minimum-guaranteed reimbursement was 42 percent of the total charges billed by Outreach for procedures, and 50 percent of the total charges billed by Outreach for consultations. The Provider Agreement also contained a provision that entitled Outreach to additional payments depending on the percentage of the medical receivables collected by Banyan and whether the collection occurred within 24 months of the parties' assignment agreement. Finally, the Provider Agreement contained a confidentiality clause that prevented Outreach from disclosing the terms of the agreement to "any outside party," including Outreach's patients.

**{¶ 8}** On June 24, 2015, Banyan delivered a fax message to Outreach officials that notified Outreach that Barcy had been approved for "a minimum guaranteed payment for [a] Neuro Consult through the Banyan Casualty Plan." (Plaintiff's exhibit No. 4.) The fax message included a Letter of Protection Form (the "LOP") and a cover sheet with instructions for Outreach to have "the patient sign [the LOP] at the time of their appointment." The LOP attached to the fax message provided as follows:

> I, Barcy, Kevin (the "Patient"), injured and pursuing a personal injury claim or cause of action, acknowledge that [Outreach] has provided medical services to me in connection with the injuries that I sustained in the accident(s) or other event(s) in which I was involved that occurred on 07/24/2014 (the "injury"). In recognition of the foregoing, I hereby authorize and direct The Podor Law Firm, L.L.C. (the "Attorney"), upon receipt by the Attorney of any proceeds of my claim or lawsuit relating to my injury (whether such proceeds arise from a settlement, judgment, structured settlement or otherwise) (collectively "Proceeds"), to pay directly to [Outreach] my entire bill for services rendered to me by [Outreach]. Payment of my services bill shall be paid to [Outreach] prior to the attorney disbursing any proceeds to me.
>
> To the extent that I have health insurance benefits, I hereby relinquish those rights voluntarily, knowingly, and intentionally. I fully understand that I am directly responsible to [Outreach] for the entire amount of the services bill. Furthermore, I understand that my payment obligation is not contingent on my recovery of any proceeds.
>
> In order to secure my obligation to pay the amount of my services bill to [Outreach], and in consideration for [Outreach's] agreement to forebear from taking any action to collect the services bill while I am pursuing my lawsuit relating to the injury, I hereby grant [Outreach], in accordance with the Uniform Commercial Code as in effect in the applicable jurisdiction, a security interest and lien upon: (i) the proceeds, and (ii) all proceeds thereof, in each case whether now owned or hereafter existing, acquired or arising, and wherever located.

The LOP did not contain Barcy's signature at the time it was delivered to Outreach. However, the document did contain the rubber-stamp signature of Barcy's attorney.

At some point thereafter, the LOP was presented to and signed by Barcy. (Defendants' exhibit A.)

{¶ 9} On July 9, 2015, Barcy met with Outreach employee, Dr. James Anderson ("Dr. Anderson"), to address his ongoing back pain. At the conclusion of the consultation, Dr. Anderson recommended that Barcy undergo spine surgery. Barcy did not immediately agree to undergo the surgery but stated that he would consider Dr. Anderson's recommendations. On July 13, 2015, Outreach faxed a copy of Dr. Anderson's office notes to Banyan along with a coversheet that identified Barcy's health plan as United Health Care Community Plan. (Plaintiff's exhibit No. 5.)

{¶ 10} On July 23, 2015, Barcy and his attorney executed a Patient Acknowledgement and Waiver form (the "Waiver form"), wherein Barcy confirmed that he was a patient at "St. Vincent," and made the following acknowledgments:

> Despite any requirement * * * for [Outreach] to submit claims for services and treatments to my Health Plan within a particular time period, and despite any statement * * * notifying [Outreach] that failure to submit claims for services within a specific timeframe will preclude payment to [Outreach] and prohibit [Outreach] from charging me for said services, [Outreach] will not be submitting claims to my health plan for any services he/she has rendered to me[.]
>
> * * *
>
> I will be responsible for payment in full for all services rendered to me by [Outreach];
>
> In lieu of [Outreach] billing me or my health plan for my services, [Outreach] will enter into a Letter of Protection with my attorney whereby [Outreach] will be compensated for all services that he/she provides to me, as a direct or indirect result of my personal injury case, from the proceeds of my settlement of said personal injury case; and

> The compensation that [Outreach] will receive under the LOP will likely exceed the compensation that [Outreach] would have received if [Outreach] would have submitted claims to my health provider for my services, and I believe that such additional compensation is equitable in the light of the nature of the services that [Outreach] will be furnishing to me.

(Plaintiff's exhibit No. 6.)

{¶ 11} On August 19, 2015, and September 23, 2015, Banyan provided Outreach with separate commitment letters wherein Banyan agreed to make guaranteed minimum reimbursements to Outreach "with respect to the medical receivables arising from [Outreach's] performance of [medical services] for Kevin Barcy." (Plaintiff's exhibit Nos. 7 and 8.) The commitment letters were subject to certain conditions, including Outreach's obligation to (1) deliver a fully executed LOP "in form and substance acceptable to Banyan," (2) provide a bill showing the gross charges for the medical services rendered, and (3) deliver to Banyan a fully executed assignment agreement.

{¶ 12} On October 16, 2015, Barcy met with Dr. Anderson and agreed to undergo the recommended surgery procedure. Outreach then faxed Medicaid a completed clinical information request form seeking preapproval for Barcy's surgery. The procedure was preapproved by Medicaid on October 19, 2015, and Barcy underwent surgery at SVCMC on October 20, 2015. (Plaintiff's exhibit No. 10.)

{¶ 13} On November 2, 2015, Outreach submitted its bill for the surgery in the amount of $11,939 to Medicaid for payment. (Plaintiff's exhibit No. 22.) On

November 24, 2015, Outreach received payment from Medicaid in the amount of $1,525.84 as payment in full for Dr. Anderson's surgical bill. (*Id.*)

{¶ 14} Despite accepting payment from Medicaid, however, Outreach also assigned to Red Fern its entire bill in the amount of $12,235.00 for the medical services rendered to Barcy on October 20, 2015. (Plaintiff's exhibit No. 10.) Red Fern subsequently assigned its interest in the medical receivables to Banyan on November 10, 2015. (Defendant's exhibit D.) On December 18, 2015, Outreach received payments from Banyan totaling $5,162.38 as payment in full for Dr. Anderson's surgical bill. (Plaintiff's exhibit No. 22.) Based on this duplicate payment, Medicaid recouped the sum of $1,135.00 from Outreach between February 26, 2016, and October 3, 2017. (*Id.*) However, Outreach continues to hold the sum of $390.84 that Medicaid paid towards Outreach's bill for the rendered medical services.

{¶ 15} Unlike Outreach, SVCMC did not enter into a Provider Agreement with Banyan. In addition, Barcy did not execute a LOP or Waiver form with SVCMC. Nevertheless, SVCMC assigned to Red Fern its entire bill in the amount of $32,361.30 for the medical services rendered to Barcy. (Plaintiff's exhibit No. 15.) Red Fern subsequently assigned its interest in the medical receivables to Banyan on November 24, 2015. (Defendant's exhibit D.) On December 1, 2015, SVCMC received payment from Banyan in the amount of $13,591.75. (Plaintiff's exhibit No. 24.)

{¶ 16} In addition to the assignment of medical bills relating to the surgery performed on October 20, 2015, Outreach and SVCMC also assigned to Red Fern various medical bills relating to pre- and post-operation appointments. These rights

were later assigned to Banyan. Collectively, the medical receivables assigned to Banyan totaled $53,303.30.

{¶ 17} On December 17, 2018, Barcy settled his personal injury case against Marc Glassman, Inc. The settlement did not include compensation for the medical services rendered by Outreach and SVCMC. Accordingly, Banyan sought a lien against Barcy's settlement proceeds in the amount of $53,303.30 pursuant to its rights under the various assignment agreements with appellants.

{¶ 18} On March 11, 2019, Barcy filed a civil complaint, seeking a declaratory judgment against appellants and defendants Banyan, Red Fern, the Ohio Department of Medicaid ("ODM"),[1] and Prime Case Funding, L.L.C. ("PCF").[2] Relevant to this appeal, Barcy sought a declaratory judgment as follows:

> 1. The Letter of Protection, Waiver and Assignment fail and are unenforceable against plaintiff because defendants failed to comply with Ohio Administrative Code Section 5160 1-13.1(c)(3).
>
> 2. That the Letter of Protection, Waiver and Assignment are unenforceable against plaintiff because they fail for want of consideration.
>
> 3. That the Letter of Protection, Waiver and Assignment of Defendant [SVCMC]'s medical bills to defendant Banyan fail and are unenforceable against plaintiff because the Letter of Protection fails to mention defendant [SVCMC].
>
> 4. That the Letter of Protection, Waiver and Assignment of any of [Outreach]'s bills after the date upon which the Letter of Protection was executed fails and is unenforceable against plaintiff because the Letter

---

[1] Defendant ODM possessed a statutory lien against Barcy's settlement proceeds and was joined in this action pursuant to R.C. 2721.12. Per stipulation, ODM did not appear or participate in the bench trial.

[2] Defendant PCF possessed a lien against Barcy's settlement proceeds and was joined in this action pursuant to R.C. 2721.12.

of Protection does not mention any future medical treatment and plaintiff did not agree to be personally responsible for future medical bills.

5. That Defendant Banyan's claimed lien against the settlement proceeds fails because plaintiff was not compensated for injuries which gave rise to the medical expenses that were assigned to defendant Banyan.

{¶ 19} On May 13, 2019, Banyan and Red Fern filed a joint answer and set forth counterclaims against Barcy for breach of contract and unjust enrichment. The counterclaims sought to recover unpaid medical receivables in the amount of $53,303.00.

{¶ 20} On November 25, 2019, Barcy was granted leave to file an amended complaint. The amended complaint restated Barcy's request for a declaratory judgment, but also set forth a claim for violations of the Consumer Sales Practices Act ("CSPA").

{¶ 21} On February 21, 2020, appellants filed a joint motion for summary judgment, arguing that Barcy was not entitled to a declaratory judgment pursuant to the doctrine of equitable estoppel. Appellants maintained that it would be inequitable to grant Barcy declaratory relief when the evidence demonstrates that Barcy and his former attorney represented to appellants that Barcy intended to pay for his spinal surgery pursuant to his own arrangement with Banyan. Appellants asserted that they relied on Barcy's representations and "entered into [a] payment arrangement [with Banyan] at the express request of Barcy." Appellants stated that they had no obligation to advise Barcy of the Medicaid consequences of his agreement with Banyan or otherwise interfere with the legal advice provided by Barcy's attorney.

{¶ 22} Appellants supported their joint motion for summary judgment with portions of the deposition testimony of SVCMC's former Director of Revenue Cycle Operations, Nanette Woldin ("Woldin"), and copies of the Provider Agreement, the LOP, the Waiver form, Banyan's commitment letters, and the assignments of medical receivables to Banyan.

{¶ 23} Banyan and Red Fern also sought summary judgment against Barcy, arguing that (1) Banyan had no duty to advise Barcy that any medical services were covered by Medicaid, (2) the LOP signed by Barcy does not fail for lack of consideration, and (3) the CSPA is not applicable because the instant matter involved exempt transactions under R.C. 1345.01. Regarding Barcy's reliance on Ohio Adm.Code 5160-1-13.1(C) in his complaint, Banyan and Red Fern maintained that (1) they were not the "provider" as contemplated under the administrative code, (2) they had "no knowledge that Barcy was Medicaid eligible or had any such coverage in place," and (3) "notwithstanding the foregoing, all of the conditions of [the administrative code] were met through Barcy's execution of the LOP and the Waiver." Finally, Banyan and Red Fern argued they were entitled to summary judgment on their breach-of-contract and unjust-enrichment counterclaims because Barcy agreed to pay SVCMC and Outreach his full medical bill upon recovery of any proceeds in his slip-and-fall case and, in turn, those rights to recovery were assigned to Banyan.

{¶ 24} In support of their joint motion for summary judgment, Banyan and Red Fern attached copies of the LOP and the Waiver form that were signed by Barcy

and his attorney. The motion also attached copies of the pertinent commitment letters and assignments of medical receivables.

{¶ 25} On March 24, 2020, Barcy filed a brief in opposition to summary judgment. In his opposition brief, Barcy argued that summary judgment was premature because "material questions of fact exist as to whether defendants violated not only the [Ohio Administrative Code], but also the [CSPA], because of the numerous deficiencies in the documents upon which defendants base their claims." Barcy supported his opposition brief with his own affidavit and references to the Provider Agreement, the LOP, the Waiver form, Dr. Anderson's office notes, Banyan's commitment letters, and the various assignments of medical receivables.

{¶ 26} On August 26, 2020, the trial court granted partial summary judgment in favor of each defendant, stating:

> Upon due consideration, the court finds there remain no material issues of fact and defendants are entitled to judgment as a matter of law on [Barcy]'s claim for a declaratory judgment that the [LOP], [Waiver form], and assignments are unenforceable against [Barcy] because they fail for want of consideration. The court grants defendants' summary judgment on that claim only.

{¶ 27} The court, however, determined that there remained genuine issues of material fact on Barcy's remaining requests for declaratory relief and the defendants' counterclaims, stating:

> The court finds there remain material issues of fact and that defendants have not shown they are entitled to judgment as a matter of law on [Barcy]'s other claims or defendants' counterclaims. The court therefore denies defendants' motion for summary judgment on all claims and counterclaims other than that described above.

{¶ 28} The matter proceeded to a bench trial on February 22, 2021. At trial, Woldin was called to testify as if on cross-examination. Woldin testified that she was formerly employed as SVCMC's Director of Revenue Cycle Operations and was responsible for SVCMC's billing procedures at the time of Barcy's surgery. Relevant to this appeal, Woldin confirmed that SVCMC and Outreach are distinct entities that have separate offices, separate employees, and separately bill patients for medical services. Throughout her testimony, Woldin was questioned about the Provider Agreement, the LOP, and the Waiver form. When asked what relevance these documents had to SVCMC's interests, Woldin confirmed that SVCMC did not enter into a provider agreement with Banyan or Red Fern, and that she was not aware of any LOP or Waiver form entered into between SVCMC and Barcy. Woldin agreed that although the Waiver form listed "St. Vincent" as the medical-services provider, the form's incorporation of the LOP entered into between Barcy and Outreach demonstrated that the Waiver form was only intended to apply to Outreach. Accordingly, Woldin was not aware of any documents that were executed between Barcy and SVCMC concerning the payment of his medical bills. (Tr. 48-49.)

{¶ 29} Woldin was also questioned at length regarding the scope and nature of SVCMC's assignments of medical receivables to Red Fern, who then assigned their interests to Banyan. Woldin testified that her understanding of the assignments was that SVCMC was assigning its right to collect the full bill for medical services rendered to Barcy in exchange for "Banyan/Red Fern's" agreement to pay SVCMC a guaranteed minimum payment for said medical services. (Tr. 58-59.) Woldin confirmed that

SVCMC did not notify Barcy that his medical bills were assigned to Banyan/Red Fern. (Tr. 60-61.)

{¶ 30} Finally, Woldin testified that although SVCMC understood Barcy was a Medicaid-eligible patient, SVCMC did not engage in any discussions with Barcy concerning the fact that his medical services were Medicaid provider services and that Medicaid would pay for the medical services. (Tr. 50.) In addition, Woldin confirmed that SVCMC did not advise Barcy in writing that the charges for his rendered medical services would not be submitted to ODM. (Tr. 61.)

{¶ 31} On direct examination, Woldin testified that SVCMC did not submit Barcy's medical bills to ODM because "Medicaid is the payer of last resort." (Tr. 62.) Woldin explained that pursuant to Medicaid regulations, "if someone else is ready and willing to pay a bill, [SVCMC] must bill them before billing Medicaid." (Tr. 62.) In this matter, SVCMC perceived Banyan as the primary insurance company based on the information it received from "the medical group," i.e., Outreach. (Tr. 63.) Woldin later conceded, however, that SVCMC would ordinarily have no right to directly bill a patient for rendered medical services if that patient is a Medicaid-eligible patient. She further testified that she had no knowledge of "what the arrangement is between Mr. Barcy and Banyan." (Tr. 66.)

{¶ 32} Linda Riegelmayer ("Riegelmayer"), testified as if on cross-examination. She testified that in 2014, she was employed by Outreach and served as Dr. Anderson's secretary. Riegelmayer stated that she was responsible for seeking preapproval of payment for surgeries performed by Dr. Anderson. Relevant to this

case, Riegelmayer testified that Outreach was aware Barcy was a Medicaid-eligible patient, but that "Banyan was covering [the payment] of his medical bills." (Tr. 78.) Riegelmayer stated that she was under the impression Barcy understood his medical bills would be submitted to Banyan. However, Riegelmayer confirmed that Outreach did not notify Barcy in writing that his medical bills would be submitted to Banyan and not to ODM.

{¶ 33} Regarding the preapproval process, Riegelmayer testified that although Outreach received commitment letters from Banyan that authorized Outreach to proceed with the surgery, Outreach also sought preapproval from Medicaid. Riegelmayer explained that she was advised to seek preapproval from Medicaid "just in case Banyan did not pay for it, [Outreach] had something to fall back on[.]" (Tr. 91.) Barcy, however, was not notified that Medicaid had preapproved payment of his medical services. (Tr. 92.)

{¶ 34} On direct examination, Riegelmayer explained how Dr. Anderson's office became aware of Banyan, stating:

> We received an email from [SVCMC] that we may or may not be getting referrals with patients who have the Banyan coverage and we were to treat it as a coverage, see the patient, and just proceed with the insurance company how we do with insurance companies, make sure we do the proper paperwork and get the proper okays.

(Tr. 97.)

{¶ 35} Riegelmayer stated that her office later received a fax message from Banyan, advising Outreach that Barcy "had been approved for a minimum guaranteed payment for a Neuro Consult through the Banyan Casualty Medical Plan." (Plaintiff's

exhibit No. 4.) Riegelmayer testified that she spoke with Barcy about Outreach getting approval from Banyan to proceed with his surgery and that Barcy did not question why Outreach was billing Banyan.

{¶ 36} Director of Finance at Outreach, Theresa Wrabel ("Wrabel"), testified as if on cross-examination. She confirmed that Outreach understood Barcy was insured under a Medicaid-healthcare plan and that Barcy would not have been personally liable for his medical bills if they were submitted to, and paid by, Medicaid. Wrabel confirmed that prior to Barcy's surgery, Outreach and Banyan entered into the Provider Agreement, whereby Banyan agreed to pay Outreach a certain percentage of the patient's medical-service charges in exchange for Outreach's agreement to assign the outstanding balance of the patient's medical bill in favor of Banyan. The terms and conditions of the Provider Agreement were not disclosed to Barcy.

{¶ 37} Wrabel further confirmed that despite its commitment from Banyan, Outreach submitted a bill to Medicaid in an amount of $11,939, and received payment in the amount of $1,525.84 from Barcy's Medicaid provider. Thereafter, Outreach also received payment for the same medical services from Banyan in an amount approximately five times greater than what was paid by Medicaid. Wrabel acknowledged that once Outreach receives a payment from Medicaid, it is not entitled to bill the patient for the remaining balance of the bill. Nevertheless, Outreach accepted the guaranteed-minimum reimbursement payment from Banyan pursuant

to the Provider Agreement, proceeded with its obligations to execute an assignment agreement in favor of Banyan/Red Fern, and returned all but $390 to Medicaid.

{¶ 38} On direct-examination, Wrabel explained that Outreach was not financially incentivized to bill Banyan instead of Medicaid. Rather, she indicated that Banyan was billed for Barcy's medical services based on her understanding that "Mr. Barcy executed certain documents indicating that is how he wanted his bills to be paid[.]" (Tr. 127.) Wrabel later clarified her statement on redirect-examination, stating that Outreach billed Banyan because "I ha[d] documentation from Banyan that said that we should be billing them." (Tr. 133.)

{¶ 39} General counsel for Banyan, Brandon Marton ("Marton"), testified on behalf of defendants Banyan and Red Fern. He explained that Banyan is in the business of purchasing medical receivables on a "LOP/lien basis" for patients with personal injury cases. In turn, Red Fern served as a broker that looked nationwide for receivables that would be appropriate for Banyan to purchase. Marton testified that Banyan generated the LOP that was sent to Outreach and signed by Barcy in this case. He clarified, however, that the LOP is presented to the patient by the medical provider and not Banyan.

{¶ 40} Marton testified that he was not aware that Barcy had Medicaid coverage. In addition, he had no knowledge that Outreach and SVCMC were two separate entities. However, he confirmed that Banyan paid Outreach and SVCMC approximately "40 to 50 percent of [Barcy's] medical bill" upfront in order to obtain the assignments of Barcy's outstanding medical bill, which totaled $53,303.30.

{¶ 41} Barcy testified on his own behalf. He summarized his history of mental illness and confirmed that he receives social security disability income. He further described the circumstances of his slip-and-fall case and the severity of the resulting injuries to his ankle and back. Barcy testified that at all relevant time periods he had medical insurance with "UnitedHealth Community Plan through [ODM]." (Tr. 140.) Barcy stated that when he arrived at Dr. Anderson's office, he presented his identification card and his UnitedHealth insurance card.

{¶ 42} Regarding the LOP and the Waiver form, Barcy testified that he had no recollection of signing either document and had no recollection of being told by appellants' representatives that Banyan intended to pay for his spinal surgery. The only conversation Barcy recalled concerning his insurance coverage was a statement from Dr. Anderson's office that it was waiting for preapproval from Barcy's Medicaid provider before his surgery could be scheduled. Accordingly, Barcy maintained that he was never advised or provided written notice that his surgical bill would not be submitted to the ODM for payment. Barcy further stated that no one explained to him that the medical services provided by appellants, including his surgery, were covered Medicaid services and that other Medicaid providers may have rendered the medical services at no charge to him.

{¶ 43} On cross-examination, Barcy reiterated that although his signature and the signature of his former attorney were present on the LOP and the Waiver form, he did not recall having conversations with his former attorney about the documents or a financial arrangement with Banyan. Barcy stated that he understood Banyan was

attempting to recover approximately $53,000 from his settlement proceeds because they "paid for some of [his] medical procedures including [his] surgery." (Tr. 158.) However, he maintained that he had no knowledge of why Banyan would have advanced payments for his spinal surgery, stating "I would never intentionally or knowingly give up my Medicaid rights." (Tr. 158.)

{¶ 44} On May 14, 2021, the trial court issued findings of fact and conclusions of law, granting partial judgment in favor of Barcy. In pertinent part, the trial court found (1) appellants "were precluded from billing Barcy for services rendered due to its failure to comply with Ohio Adm.Code 5160-1-13.1," (2) "equitable estoppel does not remove [appellants'] obligation to comply with Ohio Adm.Code 5160-1-13.1(C)," (3) Banyan's breach-of-contract claim against Barcy fails because the assigned claims of appellants are unenforceable against Barcy, (4) Banyan failed to prove its claim for unjust enrichment, and (5) the defendants did not violate the CSPA. The trial court summarized its judgment as follows:

> WHEREFORE, for the foregoing reasons, the court finds (1) for [Barcy] on Count One of the complaint and declares the Letter of Protection, Waiver and Acknowledgement and Assignments to be in violation of Ohio Adm. Code 5160-1-13.1 and unenforceable against [Barcy] and further declares that Banyan's claimed lien against the settlement proceeds fails for the same reasons; (2) for the defendants on Count Two of the complaint; and (3) for [Barcy] on Banyan's counterclaims. The court orders that the settlement proceeds that remain in [former attorney's] IOLTA account should be disbursed first to attorney fees and any remaining costs advances and unpaid litigation expenses, then to satisfy [ODM]'s lien in the amount of $805.13 and the balance to be distributed to Plaintiff Kevin Barcy.

{¶ 45} Appellants now appeal from the trial court's judgment.

## II. Law and Analysis

## A. Ohio Adm.Code 5160-1-13.1

{¶ 46} In their first assignment of error, appellants argue the trial court erred by granting partial judgment in favor of Barcy and declaring that they are precluded from billing Barcy for medical services due to their failures to comply with Ohio Adm.Code 5160-1-13.1.

{¶ 47} Under the Ohio Declaratory Judgment Act, "courts of record may declare rights, status, and other legal relations whether or not further relief is or could be claimed." R.C. 2721.02(A). The purpose of a declaratory judgment action is "'to serve the useful end of disposing of uncertain or disputed obligations quickly and conclusively.'" *Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 46 quoting *Ohio Farmers Indemn. Co. v. Chames*, 170 Ohio St. 209, 213, 163 N.E.2d 367 (1959). In order to obtain declaratory judgment relief, a party must establish (1) a real controversy exists between the parties, (2) the controversy is justiciable, and (3) speedy relief is necessary to preserve the rights of the parties. *Burger Brewing Co. v. Ohio Liquor Control Comm.*, 34 Ohio St.2d 93, 97, 296 N.E.2d 261 (1973), citing *Am. Life & Acc. Ins. Co. v. Jones*, 152 Ohio St. 287, 89 N.E.2d 301 (1949).

{¶ 48} In this case, the trial court's judgment relied extensively on Ohio Adm.Code 5160-1-13.1, titled Medicaid Recipient Liability. The version of Ohio Adm.Code 5160-1-13.1(C) in effect during the applicable time periods provided as follows:

(C) Providers are not required to bill the Ohio department of medicaid (ODM) for medicaid-covered services rendered to eligible consumers. However, providers may not bill consumers in lieu of ODM unless:

(1) The consumer is notified in writing prior to the service being rendered that the provider will not bill ODM for the covered service; and

(2) The consumer agrees to be liable for payment of the service and signs a written statement to that effect prior to the service being rendered; and

(3) The provider explains to the consumer that the service is a covered medicaid service and other medicaid providers may render the service at no cost to the consumer.

{¶ 49} Applying the foregoing provisions to the facts adduced at trial, the court rendered the following conclusions of law:

> In all instances, Outreach and SVCMC failed to fully comply with the requirements of Ohio Adm.Code 5160-1-13.1(C) listed above. The LOP and [Waiver form] do not indicate that the provider will not bill ODM. No written statement was signed prior to each service being rendered, and there is no evidence that Outreach and SVCMC explained to [Barcy] that the services were covered Medicaid services and that other Medicaid providers may render the service at no cost to him.
>
> The court finds that [Barcy] is entitled to a declaratory judgment that defendants Outreach and SVCMC did not comply with Ohio Adm.Code 5160-1-13.1 and therefore may not bill [Barcy] for the subject services.
>
> * * *
>
> Because, for the reasons discussed above, [Barcy] is not obligated to pay Outreach or SVCMC for the services in the assigned invoices, [Barcy] is not obligated to pay Banyan or Red Fern for the assigned services. [Barcy] is entitled to judgment on defendants' breach of contract claim because defendants have not demonstrated that [Barcy] failed to fulfill its contractual obligations without legal excuse.
>
> The court further finds that [Barcy] is entitled to a declaration that defendants, including Banyan, may not seek to enforce a lien against the settlement proceeds to recover for the assigned bills.

{¶ 50} On appeal, appellants argue "the trial court's decision was against the manifest weight of the evidence and/or was an erroneous application of the law." Appellants contend that "applying [Ohio Adm.Code 5160.-1-13.1(C)] to the facts in this case demonstrates that Outreach and SVCMC complied with the provisions through the documents produced by and signed by [Barcy] and his attorney." Specifically, appellants assert that the language contained in the LOP and the Waiver form satisfied the requirements of the administrative code.

{¶ 51} In an appeal from a civil bench trial, this court generally reviews the trial court's judgment under a manifest weight standard of review. *Huntington Natl. Bank v. Slodov*, 8th Dist. Cuyahoga No. 110113, 2021-Ohio-2932, ¶ 47. In assessing whether a verdict in a civil bench trial is against the manifest weight of the evidence, we examine the entire record, weigh the evidence and all reasonable inferences, consider the witnesses' credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the verdict must be overturned and a new trial ordered. *Sonis v. Rasner*, 2015-Ohio-3028, 39 N.E.3d 871, ¶ 53 (8th Dist.), citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). In weighing the evidence, we are guided by a presumption that the findings of the trier of fact are correct. *Id.* at ¶ 54, citing *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). Thus, "a reviewing court will generally uphold a trial court's judgment as long as the manifest weight of the evidence supports it — that is, as long as 'some' competent and credible evidence supports it." *Patel v. Strategic Group, L.L.C.*, 2020-Ohio-4990, 161

N.E.3d 42, ¶ 20 (8th Dist.), quoting *MRI Software, L.L.C. v. W. Oaks Mall FL, L.L.C.*, 2018-Ohio-2190, 116 N.E.3d 694, ¶ 12 (8th Dist.).

{¶ 52} We note, however, that "[i]n reviewing a declaratory judgment case, legal questions are subject to de novo review whereby no deference is given to the trial court's decision." *Gill v. Guru Gobind Sikh Soc. of Cleveland*, 8th Dist. Cuyahoga No. 104634, 2017-Ohio-7163, ¶ 29 (citations omitted). Here, appellants present hybrid arguments that challenge the trial court's resolution of facts, as well as the court's interpretation of the terms contained within the documents executed by Barcy and his attorney. To the extent appellants dispute the trial court's interpretation of the LOP and the Waiver form, we apply the de novo standard of review. In contrast, we apply the manifest weight of the evidence standard to all arguments pertaining to the court's interpretation of competing facts and its consideration of witness credibility.

{¶ 53} In addressing appellants' challenges to the court's interpretation of the relevant documents signed by Barcy and his attorney, we must preliminarily acknowledge that Outreach and SVCMC are distinct and independent entities. Each entity was required to separately comply with the requirements of Ohio Adm.Code 5160-1-13.1 given Barcy's status as a Medicaid-eligible patient. Relevant to this point, the testimony adduced at trial established that Outreach was the only medical-service provider implicated by the Provider Agreement, the LOP, and the Waiver form. The LOP and the Waiver form were presented to Barcy by representatives of Outreach and

each document lists Outreach as the medical-service provider.[3]  Thus, our review of the language contained in the foregoing documents is only pertinent to the interest of Outreach and whether its agreements with Barcy satisfied the requirements of Ohio Adm.Code-1-13.1.  SVCMC's compliance with the administrative code must be separately addressed upon consideration of the testimony presented at trial.

{¶ 54} As discussed, the LOP and Waiver form entered in favor of Outreach were signed by Barcy and his attorney before Barcy underwent his spinal surgery. Undoubtedly, these documents evidenced Barcy's intent to relinquish significant rights and take on equally significant personal liabilities.  In the LOP, Barcy expressly acknowledged that he (1) agreed to pay Outreach his "entire bill" with the proceeds of his slip-and-fall settlement, (2) was relinquishing his health insurance benefits, (3) understood that he was directly responsible to Outreach for the entire amount of his services bill, and (4) was granting Outreach a security interest and lien on the proceeds of his slip-and fall settlement.  Similarly, Barcy acknowledged in the Waiver form that (1) Outreach would "not be submitting claims to [his health plan] for any services [Outreach] has rendered to [him]," (2) he would "be responsible for payment in full for all services rendered by [Outreach]," and (3) Outreach was entering into an LOP with Barcy in lieu of billing his healthcare provider.  Barcy is presumed to have knowledge and an understanding of the terms he agreed to by signing the LOP and

---

[3] As discussed at trial, the Waiver form lists the medical-services "provider" as "St. Vincent."  However, because the Waiver form incorporates the LOP, which was exclusively executed in favor of Outreach, the representatives of Outreach and SVCMC did not dispute that SVCMC was not a party to the LOP or the Waiver form.

the Waiver form. *Butcher v. Bally Total Fitness Corp.*, 8th Dist. Cuyahoga No. 81593, 2003-Ohio-1734, ¶ 35 ("The parties to an agreement should be able to rely on the fact that affixing a signature which acknowledges one has read, understood, and agrees to be bound by the terms of an agreement means what it purports to mean.").

{¶ 55} Given the significance of the rights and responsibilities addressed in the LOP and the Waiver form, it is reasonable to argue Barcy was afforded the protections contemplated under Ohio Adm.Code 5160-1-13.1(C)(1) and (2) because Barcy expressly relinquished his health insurance benefits (United Healthcare Community Plan -Medicaid) and agreed to be directly responsible for Outreach's entire bill. This is true even though the LOP and the Waiver form do not directly reference ODM.

{¶ 56} Nevertheless, even if this court were to construe the first and second requirements of the administrative rule in favor of the appellants, we find the trial court correctly concluded that there is no language in the LOP or the Waiver form to suggest Outreach complied with the express requirement of Ohio Adm.Code 5160-1-13.1(C)(3). The documents simply contain no language indicating that Barcy was advised that his medical services were covered Medicaid services and that other Medicaid providers could render his medical services at no cost to Barcy. Contrary to appellants' joint position on appeal, advising Barcy that he would be directly liable for his medical bills and that his health plan provider would not be billed is not the same as advising Barcy that his covered medical services would have been paid by Medicaid at no cost to him. The explanation set forth in then Ohio Adm.Code 5160-1-13.1(C)(3) is the heart of the administrative code section governing the billing of Medicaid-

eligible patients. Accordingly, we find the trial court's interpretation of the terms set forth in the LOP and the Waiver form did not constitute an erroneous application of the law.

{¶ 57} Recognizing that Ohio Adm.Code 5160-1-13.1(C)(3) does not require the explanation to be in writing, we further find that competent and credible evidence supports the court's conclusion that there was no evidence that Outreach orally made the necessary explanation to Barcy. At trial, Wrabel testified on behalf of Outreach and conceded that Outreach understood Barcy was a Medicaid-eligible patient. (Tr. 105.) She further testified that she was not familiar with the requirements of the administrative code or the advisements that are required before a Medicaid-eligible patient may be billed for rendered medical services. (Tr. 107-108.) Thus, Wrabel confirmed that there was no practice in place at Outreach to provide Medicaid-eligible patients who were to be billed directly with information about their rights under the administrative code. (Tr. 109.) Under these circumstances, we find the evidence supports the trial court's determination that "no one explained to [Barcy] that the services provided by Outreach and to be provided by Outreach, including the surgery, were covered Medicaid services and other Medicaid providers may render the services at no charge to [Barcy]."

{¶ 58} With respect to SVCMC, we reiterate that SVCMC was not a party to the LOP or the Waiver form executed between Barcy and Outreach. In the absence of a written agreement to interpret, SVCMC's contention that it complied with Ohio Adm.Code 5160-1-13.1(C) presents an issue of fact. Here, Woldin testified on behalf

of SVCMC and confirmed that she was "not aware of any documents that were executed between Mr. Barcy and [SVCMC] concerning payment." (Tr. 48-49.) Woldin further testified that because SVCMC understood Barcy was a Medicaid-eligible patient, SVCMC did not offer Barcy consumer finance education or have him speak with a financial counselor. (Tr. 54.) In the absence of an open dialogue, Barcy was not advised of SVCMC's intentions to assign his medical receivables to Banyan. (Tr. 60-61.) Nor was Barcy advised in writing of his potential personal liability for the rendered medical services or that the charges for his medical services would not be submitted to ODM. (Tr. 60-61.) Finally, Woldin conceded that SVCMC did not engage in any discussions with Barcy concerning the fact that his medical services were Medicaid-provider services and that Medicaid would pay for the medical services. (Tr. 50.) Viewing these facts collectively, we find competent and credible evidence supporting the trial court's determination that, "in all instances, SVCMC failed fully to comply with the requirements of Ohio Adm.Code 5160-1-13.1(C) listed above."

{¶ 59} Based on the foregoing, we find the trial court's declaratory judgment in favor of Barcy is not against the manifest weight of the evidence and is consistent with this court's interpretation of Ohio Adm.Code 5160-1-13.1 and the relevant exhibits submitted in this matter.

{¶ 60} The first assignment of error is overruled.

## B. Equitable estoppel

{¶ 61} In their second assignment of error, appellants argue the trial court erred by failing to conclude that Barcy was equitably estopped from challenging the validity and enforceability of the LOP, the Waiver form, and the assignments to Banyan.

{¶ 62} Under the doctrine of equitable estoppel, "'a representation of past or existing fact made to a party who relies upon it reasonably may not thereafter be denied by the party making the representation if permitting the denial would result in injury or damage to the party who so relies.'" *Hortman v. Miamisburg*, 110 Ohio St.3d 194, 2006-Ohio-4251, 852 N.E.2d 716, ¶ 20, quoting 4 Richard A. Lord, *Williston on Contracts*, Section 8:3, at 28-31 (4th Ed.1992). "'The purpose of equitable estoppel is to prevent actual or constructive fraud and to promote the ends of justice.'" *Doe v. Archdiocese of Cincinnati*, 109 Ohio St.3d 491, 2006-Ohio-2625, 849 N.E.2d 268, ¶ 43, quoting *Ohio State Bd. of Pharmacy v. Frantz*, 51 Ohio St.3d 143, 145, 555 N.E.2d 630 (1990).

> The party claiming estoppel "'must demonstrate: (1) that the defendant made a factual misrepresentation; (2) that is misleading; (3) that induces actual reliance which is reasonable and in good faith; and (4) which causes detriment to the relying party.'" *Clark v. Univ. Hosps. of Cleveland*, 8th Dist. Cuyahoga No. 78854, 2001 Ohio App. LEXIS 3832, 14-15 (Aug. 30, 2001), quoting *Livingston v. Diocese of Cleveland*, 126 Ohio App.3d 299, 710 N.E.2d 330 (8th Dist.1998).

*N. Frozen Foods, Inc. v. Farro*, 2019-Ohio-5344, 138 N.E.3d 1223, ¶ 25 (8th Dist.).

{¶ 63} In this case, appellants argued at trial that their decision to assign certain medical receivables to Banyan in lieu of billing ODM was made, entirely, at

the request of Barcy and his former attorney. The appellants insisted that Barcy presented them with certain documents representing that he wanted his medical bills to be paid by Banyan/Redfern, and that Outreach and SVCMC had no duty to interfere with Barcy's arrangement with Banyan or otherwise provide him legal advice. In contrast, Barcy testified at trial that he only agreed to undergo the spinal surgery under the belief that his medical bills would be submitted to ODM for payment. He emphasized that he would never knowingly instruct his medical providers to enter into a payment arrangement that would relinquish his Medicaid rights.

{¶ 64} In its finding and facts and conclusions of law, the trial court rejected appellants' reliance on the doctrine of equitable estoppel, stating:

> Equitable estoppel does not remove SVCMC and Outreach's obligation to comply with Ohio Adm.Code 5160-1-13.1.
>
> Defendants have not demonstrated factual misrepresentations or fraud requiring [Barcy] to be equitably estopped from raising SVCMC and Outreach's failure to comply with Ohio Adm.Code 5160-1-13.1 as a defense to Banyan and Red Fern's claims.
>
> Finding that [Barcy] is equitably estopped from raising SVCMC and Outreach's failure to comply with Ohio Adm.Code 5160-1-13.1 would not promote the ends of justice.

{¶ 65} On appeal, appellants argue the trial court's application of the doctrine of equitable estoppel is against the manifest weight of the evidence. Appellants contend they established a prima facie case of equitable estoppel by presenting evidence that (1) Barcy and his attorney presented an arrangement to appellants concerning how Barcy wished to pay for his spinal surgery, (2) appellants were provided documents evidencing this arrangement that guaranteed appellants a

guaranteed payment from Banyan in exchange for the assignment of medical receivables to Banyan, and (3) appellants relied on Barcy's representations, to their detriment. Again, appellants reiterate their position that because they entered into the disputed billing arrangement "*at the express direction of [Barcy] and his attorney,*" they were not required to warn Barcy of the Medicaid consequences of his requests. (Emphasis sic.)

{¶ 66} Viewing the trial testimony and the incorporated documents in their entirety, we find competent, credible evidence supports the trial court's determination that the doctrine of equitable estoppel was inapplicable in this matter.

{¶ 67} To the extent appellants' position on appeal can be interpreted as an argument that they should be excused from their obligation to comply with the express requirements of Ohio Adm.Code 5160-1-13.1(C) because Barcy represented his intent to relinquish certain rights by signing the LOP and the Waiver form, we are unpersuaded. As discussed, there is no dispute that by signing the LOP and the Waiver form, Barcy acknowledged that he was knowingly relinquishing his health benefits and agreeing to be responsible for payment in full of his medical bills. However, the administrative code clearly mandates that Medicaid-eligible patients may not be billed for medical services unless the medical-service provider satisfies each requirement of Ohio Adm.Code 5160-1-13.1(C). These requirements are in place to ensure that a Medicaid-eligible patient fully understands the protections afforded to him or her as it pertains to billing. Given the intent of the administrative code provision and the competing financial interests of the medical-service providers in

this case, we are unable to conclude that the ends of justice would be served by relieving appellants of their obligation to explain that the medical service could have been provided by another provider at no cost to Barcy. Had the advisement under Ohio Adm.Code 5160-1-13.2(C)(3) been provided in this matter, it would not have constituted legal advice or an interference with Barcy's relationship with his attorney. Rather, the advisement would have constituted compliance with an unambiguous section of the administrative code. A holding to the contrary would be inconsistent with the goals of Ohio Adm.Code 5160-1-13.1.

{¶ 68} Finally, to the extent appellants' position on appeal can be interpreted as an argument that they should be excused from their obligations under Ohio Adm.Code 5160-1-13.1(C) because Barcy expressly directed them to enter into a payment arrangement with Banyan, we are equally unpersuaded. Significantly, the greater weight of the evidence supports the conclusion that Barcy did not make a factual misrepresentation to Outreach or SVCMC concerning Banyan or his desire to be billed in accordance with an independent financial arrangement with Banyan.

{¶ 69} In reaching this conclusion, we are aware that Wrabel testified that Outreach billed Banyan in lieu of ODM because "Barcy executed certain documents indicating that is how he wanted his bills to be paid," and that "[Outreach] had a patient of Banyan's and per the documentation we were supposed to bill Banyan." (Tr. 127; 131.) In turn, Woldin testified that SVCMC was notified by Outreach that Barcy "would be coming for services" and that his medical services would be paid pursuant to an arrangement with Banyan. (Tr. 63; 66.) While the foregoing

testimony reflects Wrabel and Woldin's personal belief that they were following the wishes of Barcy, their testimony contains no direct references to statements made by Barcy to officials of SVCMC or Outreach.

{¶ 70} In addition, we find no information in the documentary evidence to suggest that Barcy directly instructed SVCMC and Outreach to receive payment from Banyan in lieu of billing ODM. Here, the unambiguous evidence introduced at trial demonstrated that Outreach's relationship with Banyan began well before Barcy was referred to Dr. Anderson. In particular, Outreach and Banyan entered into the Policy Agreement in 2014, wherein the parties agreed to a billing structure that is consistent with the structure employed in this case. Moreover, contrary to the claim that Barcy directed appellants to accept payment from Banyan, the evidence reflects that the financial arrangement between appellants and Banyan arose once Banyan contacted Outreach in a fax message dated June 24, 2015. There is no language in the fax message to suggest Banyan contacted Outreach at the behest of Barcy. Rather, the language used in the fax message, including Banyan's advisement that Barcy was approved for a minimum-guaranteed reimbursement, was consistent with the parties' corresponding rights and obligations under the Provider Agreement.

{¶ 71} Presumably, Wrabel's testimony that Outreach's decision to enter into an arrangement with Banyan was based on Barcy's execution of "certain documents" referred to the LOP and the Waiver form. These documents, however, were provided to Outreach by Banyan — not Barcy. (Tr. 80; 131.) Moreover, the documents do not reference Banyan and there is no language in the documents to support Wrabel's

assertion that Barcy's signature constituted a directive to accept payment from Banyan for his medical services. To the contrary, the terms of each agreement only contemplate a financial arrangement that was exclusively entered into between Outreach and Barcy. In turn, the subsequent commitment letters and assignment agreements consist of communications and financial arrangements that are exclusively between Banyan and appellants. Barcy is not a party to their exchanged correspondences or a signatory on the relevant assignment agreements. In fact, representatives of Outreach confirmed that Barcy was not notified of its relationship with Banyan pursuant to the confidentiality clause of the Provider Agreement. (Tr. 111.) Similarly, Woldin confirmed that Barcy would not have been notified by SVCMC that his medical receivables were assigned to Banyan. (Tr. 61.) Under the foregoing circumstances, we find the LOP and the Waiver form fail to establish a link between a representation made by Barcy and appellants' decision to enter into a favorable billing arrangement with Banyan.

{¶ 72} This court is aware that Banyan is in the business of solicitation and that the signature of Barcy's former attorney was present on the LOP at the time it was attached to the fax message Banyan sent to Outreach. However, the scope of former counsel's authority and nature of his alleged dealings with Banyan were not fully developed at trial. It is well settled that to succeed on a claim of equitable estoppel, "[t]he party raising the defense bears the burden of demonstrating its applicability." *Machnics v. Sloe*, 11th Dist. Geauga No. 2004-G-2554, 2005-Ohio-935, ¶ 68, citing *MatchMaker Internatl., Inc. v. Long*, 100 Ohio App.3d 406, 408, 654 N.E.2d 161 (9th

Dist.1995).  On this record, the weight of the evidence supports the trial court's determination that appellants failed to satisfy their respective burden of proof.  The second assignment of error is overruled.

{¶ 73} Judgment affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

FRANK DANIEL CELEBREZZE, III, P.J., and
CORNELIUS J. O'SULLIVAN, JR., J., CONCUR